**UNITED STATES of America,**
**Appellee,**

v.

**Robert DeNOIA et al., Appellants.**

**Nos. 3, 54, 55, Dockets 71–1032,**
**71–1145, 71–1175.**

United States Court of Appeals,
Second Circuit.

Argued Sept. 24, 1971.

Decided Nov. 1, 1971.

———◆———

I. Howard Kay, New York City, for appellant DeNoia.

Bob A. Kramer, New York City (Bobick, Deutsch & Schlesser, New York, City, on the brief), for appellant Jacovino.

Jerald Rosenthal, New York City (Fruchtman & Lindenauer, New York City, on the brief), for appellant Scorzello.

Arthur J. Viviani, Asst. U. S. Atty., New York City (Whitney North Seymour, Jr., U. S. Atty., Charles B. Updike and Peter F. Rient, Asst. U. S. Attys., New York City, on the brief), for appellee.

Before FRIENDLY, Chief Judge, MULLIGAN and TIMBERS, Circuit Judges.

PER CURIAM:

The only issue on appeal in this routine narcotics case which warrants brief mention is the sufficiency of the evidence connecting appellants to the conspiracy.

Appellants DeNoia, Jacovino and Scorzello appeal from judgments of conviction entered upon a jury verdict after a three day trial in the District Court for the Southern District of New York, Lloyd F. MacMahon, *District Judge,* finding them guilty on one count of concealing, transporting and selling heroin, in violation of the federal narcotics laws, 21 U.S.C. §§ 173 and 174 (1964),[1] and on one count of conspiring to violate the same statutes. DeNoia also appeals from his conviction for possessing a firearm during the commission of a felony, in violation of 18 U.S.C. § 924(c) (Supp. IV, 1969). DeNoia, Jacovino and Scorzello were sentenced, respectively, to 8 year, 12 year and 10 year concurrent terms. Finding no prejudicial error, we affirm.

An extensive undercover investigation by the Federal Bureau of Narcotics culminated in a five-count indictment[2] returned on May 9, 1969 against appellants and two others, Dominick Amoroso and Pasquale Pavia.[3] Upon the uncontroverted testimony of the agents, the jury could have found as follows. On January 10, 1969, Pavia and Jacovino, who described the narcotics as "French goods", sold 86 grams of heroin to Agent Ellin in the men's room of a Manhattan bar. Several months later, on April 8, 1969, Scorzello assured Ellin that he and Pavia could supply any quantity of heroin and that the mer-

---

1. These sections were repealed, effective May 1, 1971, by § 1101(a)(2) of the Drug Control Act of 1970, Pub.L. 91–513, 84 Stat. 1292, and were superseded by §§ 401 and 404 of that Act. The Act also provides that prosecutions for any violation of law occurring prior to the effective date of repeal will not be affected by reason thereof. Pub.L. 91–513, 84 Stat. 1292, § 1103.

2. Counts 1–4 charged violations of 21 U.S.C. §§ 173 and 174 (1964) as follows: Count 1 charged all defendants with a conspiracy to conceal, transport and sell heroin; Count 2 charged Jacovino and Pavia with the sale of heroin; Count 3 charged Pavia with the sale of

heroin; and Count 4 charged Amoroso, DeNoia, Pavia and Scorzello with concealing and transporting heroin. Count 5 charged DeNoia and Pavia with possession of a firearm during the commission of the offenses charged in Counts 1 and 4, in violation of 18 U.S.C. § 924(c) (Supp. IV, 1969).

3. Trial of the cases against Amoroso and Pavia were severed. Amoroso pleaded guilty to Count 4 and was sentenced to the mandatory minimum term of five years. Pavia, who was a fugitive at the time of trial, subsequently pleaded guilty to Counts 1, 4 and 5 and was sentenced to ten year concurrent terms.

chandise would be from France, "right off the boat." On April 14, Pavia agreed to sell Ellin a kilogram of heroin for $28,000. Pavia arranged to meet Ellin and another agent, Devine, on April 17 at the same Manhattan bar to consummate the sale. At the designated time and place, DeNoia, while carrying a firearm, delivered a bag containing heroin to Pavia. After inspecting the contents of the bag, the agents arrested Pavia and DeNoia.

■ Appellants contend that, while there may have been sufficient proof that each of them conspired with Pavia to violate the federal narcotics laws, there is insufficient evidence from which a jury could conclude that they were aware that the scope of the conspiracy was larger than their participation as respective individuals. This argument is based primarily upon the implication of each appellant in a single transaction involving only Pavia or, in the case of DeNoia, only Pavia and Amoroso.[4]

■ For a single act to be sufficient to draw an actor within the ambit of a conspiracy to violate the federal narcotics laws, there must be independent evidence tending to prove that the defendant in question had some knowledge of the broader conspiracy, or the single act itself must be one from which such knowledge may be inferred. United States v. Agueci, 310 F.2d 817, 836 (2 Cir. 1962), cert. denied, 372 U.S. 959 (1963); United States v. Aviles, 274 F.2d 179, 189 (2 Cir.), cert. denied, 362 U.S. 974 (1960). The evidence relating to the two sales, and Jacovino's and Scorzello's proven knowledge of the common origin of the drugs in the two transactions, when combined with the size of the transactions, is sufficient for

an inference that each knew he was involved in a criminal enterprise of substantial scope, which was likely to involve other persons. Therefore, even though each was only implicated in one transaction, a jury could properly infer participation in an over-all conspiracy. United States v. Bentvena, 319 F.2d 916, 928 (2 Cir. 1963), cert. denied, 375 U.S. 940 (1964); United States v. Agueci, supra, 310 F.2d at 836.

As to DeNoia, however, we find no independent evidence linking him to the conspiracy. DeNoia's delivery of the heroin is not the kind of single transaction which itself supports an inference of knowledge of a broader conspiracy. United States v. Aviles, supra, 274 F.2d at 190; United States v. Stromberg, 268 F.2d 256, 267 (2 Cir.), cert. denied, 361 U.S. 863 (1959); United States v. Reina, 242 F.2d 302, 306 (2 Cir.), cert. denied, 354 U.S. 913 (1957). But see United States v. Agueci, supra, 310 F.2d at 836.

■ Nevertheless, assuming the insufficiency of the evidence to support DeNoia's conviction on the conspiracy count, we hold that he was not prejudiced by the submission of that count to the jury. There was ample evidence to support his convictions on the two substantive counts. Since DeNoia received concurrent sentences, valid convictions on the two substantive counts provide sufficient basis to affirm the judgment from which DeNoia appeals. United States v. Tropiano, 418 F.2d 1069, 1083 (2 Cir. 1969), cert. denied, 397 U.S. 1021 (1970); United States v. Marino, 396 F.2d 780, 781 (2 Cir. 1968).

We have considered appellants' other claims of error and find them to be without merit.

Affirmed.

---

4. On April 17, 1969, Amoroso drove DeNoia to the Manhattan bar where DeNoia delivered the heroin to Pavia. Amoroso waited in the car while DeNoia entered the bar.