UNITED STATES of America,
Plaintiff-Appellee,

v.

Thomas Hugh WILKINSON and Broadus
Vanlandingham Stewart,
Defendants-Appellants.

No. 78–5233.

United States Court of Appeals,
Fifth Circuit.

Aug. 27, 1979.

---

L. C. James, Samuel H. Wilkins, Barbara Raley, Jackson, Miss., for defendants-appellants.

Robert E. Hauberg, U. S. Atty., James B. Tucker, Asst. U. S. Atty., Jackson, Miss., for plaintiff-appellee.

Before WISDOM, GOLDBERG and VANCE, Circuit Judges.

VANCE, Circuit Judge:

Thomas Hugh Wilkinson and Broadus Vanlandingham Stewart are Mississippi gamblers whose luck ran out. Wilkinson, Stewart, and eleven codefendants were indicted by a federal grand jury on two counts stemming from their gaming activities. In the first count of the indictment, defendants were charged with conspiring to conduct an illegal gambling business in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1955[1] and to use interstate telephone services to facilitate their illegal bookmaking operation in violation of 18 U.S.C. § 371 and 18 U.S.C. § 1952(a)(3).[2] In the second count, they were charged with the substantive offense of conducting an illegal gambling business in violation of 18 U.S.C. § 1955. Defendants pleaded not guilty to both counts of the indictment.

On November 6, 1977, the jury trial of Wilkinson, Stewart, and nine of the codefendants began, but, after two days, the government dismissed the indictment as to

---

1. The following provisions are contained in 18 U.S.C. § 1955:

 (a) Whoever conducts, finances, manages, supervises, directs, or owns all or part of an illegal gambling business shall be fined not more than $20,000 or imprisoned not more than five years, or both.

 (b) As used in this section—

 (1) "illegal gambling business" means a gambling business which—

 (i) is a violation of the law of a State or political subdivision in which it is conducted;

 (ii) involves five or more persons who conduct, finance, manage, supervise, direct, or own all or part of such business; and

 (iii) has been or remains in substantially continuous operation for a period in excess of thirty days or has a gross revenue of $2,000 in any single day.

 (2) "gambling" includes but is not limited to pool-selling, bookmaking, maintaining slot machines, roulette wheels or dice tables, and conducting lotteries, policy, bolita or numbers games, or selling chances therein.

 (3) "State" means any State of the United States, the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States.

2. Title 18, section 1952 of the United States Code provides in pertinent part,

 (a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—

 . . . . .

 (3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

 and thereafter performs or attempts to perform any of the acts specified in [subparagraph (3)], shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

all defendants except Wilkinson and Stewart. The government rested its case after presenting two and one-half additional days of testimony. Wilkinson and Stewart then moved for a judgment of acquittal claiming that the government had not sufficiently proved the charges against them. The district court denied their motion and allowed the jury to consider the case. When the jury failed to reach a unanimous verdict, however, the court declared a mistrial and ordered that Wilkinson and Stewart be tried again. Before their second trial, defendants renewed their motion for judgment of acquittal, but it was again denied.

Defendants' second trial began on February 6, 1978. The government's witnesses included two persons who had been indicted with Wilkinson and Stewart and had not testified during the November trial. The jury found both Wilkinson and Stewart guilty of the conspiracy count, but not guilty of the substantive count of the indictment. Defendants moved for a judgment notwithstanding the verdict and, in the alternative, for a new trial. When the district court denied their motion, they appealed their conviction on the conspiracy charge to this court. We affirm.

Wilkinson and Stewart do not contest that they are professional bookmakers. They contend simply that they run a two-man intrastate operation and have not run afoul of federal law. On appeal they argue that the evidence adduced at their first trial was not sufficient to support a conviction and that their motions for judgment of acquittal should have been granted. They also urge that the trial court caused the jurors to render an impermissibly ambiguous verdict by instructing them that they could convict under Count I if they found that defendants conspired to violate either 18 U.S.C. § 1955(a) or 18 U.S.C. § 1952(a)(3). In addition, Stewart asserts that the government should not have been permitted to elicit testimony about Stewart's arrest record during its cross-examination of Wilkinson.

## I.

Wilkinson and Stewart first argue that, because the evidence in their first trial was insufficient, their motions for judgment of acquittal in that trial should have been granted. We first must determine whether the claimed insufficiency of the evidence in the first trial is before us on review of a judgment of conviction after a second trial. The government contends that we may not now review claimed errors committed during a former trial. We do not believe, however, that the present question comes within the rule on which the government relies. If the trial court had granted defendants' motions for acquittal on the conspiracy charge because the evidence was insufficient during their first trial, their retrial on that count would have been precluded. "The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding." *Burks v. United States,* 437 U.S. 1, 11, 98 S.Ct. 2141, 2147, 57 L.Ed.2d 1 (1978). The denial of a motion for a judgment of acquittal ordinarily is neither a final decision nor an interlocutory order and is not appealable until a final decision has been rendered. *United States v. Young,* 544 F.2d 415 (9th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 626 (1976); *Cephus v. United States,* 117 U.S.App.D.C. 15, 324 F.2d 893 (1963); 28 U.S.C. §§ 1291, 1292. In a criminal case, a judgment of conviction and a sentence are usually necessary to create finality. *Berman v. United States,* 302 U.S. 211, 58 S.Ct. 164, 82 L.Ed. 204 (1937); *United States v. Bendicks,* 439 F.2d 1120 (5th Cir. 1971). Before *Abney v. United States,* 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977), decided approximately five months before defendants' first trial, denial of a motion to dismiss an indictment on double jeopardy grounds similarly could not be appealed in this circuit until a final judgment had been rendered. *See, e.g., United States v. Bailey,* 512 F.2d 833 (5th Cir.), *cert. dismissed,* 423 U.S. 1039, 96 S.Ct. 578, 46 L.Ed.2d 415 (1975). In *Abney,* the United States Supreme Court decided that "a

defendant may seek immediate appellate review of a district court's rejection of his double jeopardy claim." 431 U.S. at 663, 97 S.Ct. at 2042. After their first trial Wilkinson and Stewart could have moved to dismiss the indictment on double jeopardy grounds and under *Abney* could have appealed an adverse decision immediately. We do not perceive, however, that *Abney's* recognition of a method of obtaining interlocutory review diminishes defendants' right to challenge at this time the denial of their motions for judgments of acquittal in their first trial.

■ We must sustain the denial of a motion for a judgment of acquittal if a reasonable jury might decide that the evidence, examined in the light most favorable to the government, is inconsistent with every reasonable theory of the defendant's innocence. *Burks v. United States,* 437 U.S. at 16, 98 S.Ct. at 2150; *United States v. Fredericks,* 586 F.2d 470, 474 (5th Cir. 1978), *cert. denied,* —— U.S. ——, 99 S.Ct. 1507, 59 L.Ed.2d 776 (1979); *United States v. Warner,* 441 F.2d 821, 825 (5th Cir.), *cert. denied,* 404 U.S. 829, 92 S.Ct. 65, 30 L.Ed.2d 58 (1971).

■ We have reviewed the transcript of the first trial and find that the evidence was sufficient to warrant a determination that each defendant conspired to violate 18 U.S.C. § 1955(a) by entering "into an agreement with one or more persons to conduct a gambling business violative of state law." *United States v. Boyd,* 566 F.2d 929, 938 (5th Cir. 1978).[3] F.B.I. Agent James W. Sammon testified that on November 20, 1976, he and other agents executed a search warrant on Wilkinson and Stewart and at that time seized gambling records and paraphernalia. Agent Sammon also testified that, in separate interviews, Wilkinson and Stewart told him that they operated together as bookmakers during football and other sports seasons. James Cleon Leggett, a small-time Mississippi bookmaker, stated that defendants were bookmakers and that he had placed bets with each defendant. F.B.I. Agents Buteau and Bonino testified that after executing the November 20, 1976, search warrant at 10:00 a. m., they answered the telephones at defendants' place of business until noon receiving calls from persons who requested line information and placed bets on football games. After examining notebooks and other papers seized from defendants, Phillip Harker, the government's expert witness, expressed an opinion that one or two of the notations recorded lay off bets from other bookmakers.

Citing *United States v. Pepe,* 512 F.2d 1129 (3rd Cir. 1975), Wilkinson and Stewart contend that the government was required to show not only that each defendant agreed with one or more persons to carry on an illegal gambling business but also that each defendant reasonably anticipated the involvement of five or more persons in the illegal gambling operation. In *United States v. Boyd,* 566 F.2d at 937–38, however, another panel of this court rejected this aspect of *United States v. Pepe* and held that this jurisdictional requirement of § 1955 does not apply to a charge of conspiracy. *Boyd* holds that the government's burden under the count charging conspiracy to violate § 1955(a) was to prove that defendants entered into an agreement with one or more persons to conduct a gambling business violative of state law. The evidence is more than sufficient to meet that burden.

■ The government also sufficiently showed that defendants conspired to use interstate facilities to carry on their illegal

3. The applicable state statute, Miss.Code Ann. § 97–33–1 provides,

 If any person shall encourage, promote or play at any game, play or amusement, for money or other valuable thing, or shall wager or bet, promote or encourage the wagering or betting any money or other valuable things, upon any game, play, amusement, cock-fight, Indian ball play, or duel, or upon the result of any election, event or contingency whatever, upon conviction thereof, he shall be fined in a sum not less than five dollars nor more than five hundred dollars; and, unless such fine and costs be immediately paid, shall be imprisoned for any period not more than twenty days nor less than five days.

gambling operation in violation of 18 U.S.C. § 1952(a)(3). George Nicholas, one of defendants' customers, testified that he telephoned defendants' business in Jackson, Mississippi, from Baton Rouge, Louisiana, to obtain line information and to place bets. Nicholas' telephone bills, admitted into evidence, showed that he had made interstate telephone calls to Wilkinson and Stewart. Nicholas denied that he had told defendants during the telephone conversations that he was calling from another state.[4] He testified, however, that when he informed defendants of the inconvenience of going to Mississippi to telephone them, defendants replied, "And if I did call and they asked where I was calling from I was to say I was calling from [Mississippi]." From this testimony, the jury could reasonably conclude that defendants had agreed to use the interstate telephone service to facilitate their unlawful bookmaking operation.

■ At the first trial, defendants presented no evidence to rebut the government's prima facie case. The district court did not err in denying defendants' motions for judgments of acquittal.

## II.

At defendants' second trial, the trial judge instructed the jury that to convict defendants they must believe beyond a reasonable doubt that defendants conspired to violate either 18 U.S.C. § 1955(a) or 18 U.S.C. § 1952(a)(3) in the manner charged in the indictment.[5] The court also allowed the government to argue Count I in the disjunctive rather than the conjunctive. The jury found the defendants guilty as charged in Count I. Wilkinson and Stewart argue that the trial judge's instruction made the verdict ambiguous and that because under such instruction the verdict could have been returned by a disagreeing jury, it should not be allowed to stand. Defendants stress that the jury acquitted

them of the substantive charge of violating 18 U.S.C. § 1955 and that "such a result should engage our judicial skepticism." *United States v. Caro,* 569 F.2d 411, 418 (5th Cir. 1978).

■ A criminal conspiracy is an agreement between two or more persons to commit a crime against the United States accompanied by an overt act in furtherance of the agreement. *E.g., United States v. Sink,* 586 F.2d 1041, 1050 (5th Cir. 1978); *United States v. Teal,* 582 F.2d 343, 345 (5th Cir. 1978); *United States v. Gutierrez,* 559 F.2d 1278, 1280 (5th Cir. 1977). A single conspiracy may have several objectives. *Ingram v. United States,* 360 U.S. 672, 679, 79 S.Ct. 1314, 3 L.Ed.2d 1503 (1959); *United States v. Bolts,* 558 F.2d 316, 325 (5th Cir. 1977), *cert. denied, Hicks v. United States,* 434 U.S. 930, 98 S.Ct. 417, 54 L.Ed.2d 290 (1978); *United States v. Beasley,* 550 F.2d 261, 276 (5th Cir.), *cert. denied,* 434 U.S. 863, 938, 98 S.Ct. 195, 427, 54 L.Ed.2d 138, 297 (1977). When a conspiracy to violate two statutes is alleged, the jury may find the defendant guilty if they believe beyond a reasonable doubt that he or she conspired to violate either one of the statutes. *United States v. O'Looney,* 544 F.2d 385 (9th Cir.), *cert. denied,* 429 U.S. 1023, 97 S.Ct. 642, 50 L.Ed.2d 625 (1976). The evidence was sufficient to require submission to the jury in connection with the conspiracy to violate either of the statutes alleged in Count I. The challenged instruction correctly submitted the count to the jury.

## III.

The following exchange took place during Wilkinson's cross-examination:

Q How long had you been knowing that it was a violation of the state law to engage in bookmaking?

A Gambling in the State of Mississippi is a misdemeanor and I've been arrest-

---

4. Defendants argue that they did not know Nicholas was calling from another state, but the "words of § 1952 do not require specific knowledge of the use of interstate facilities." *United States v. Doolittle,* 507 F.2d 1368, 1372 (5th Cir. 1975).

5. The instruction did not contain the defect that resulted in reversal in *United States v. Gipson,* 553 F.2d 453 (5th Cir. 1977).

ed and paid a fine for gambling in the State of Mississippi as a misdemeanor.

Q When was the first time?

A I think the first time was in 1961 on a punch board when I was running a grocery store.

Q You've been knowing since at least 1961 that it was in violation of the state law to engage in gambling, haven't you?

A Yes, sir.

Q How about Mr. Stewart?

A I don't know about Mr. Stewart.

Q You don't know how long Mr. Stewart has been aware it's a violation of the Law?

A No, sir.

Q State law?

A No, sir.

Q You've known about his arrests in the past, haven't you?

A Yes, sir.

Q For violations—

BY MR. JAMES:

Your Honor, we object and move for a mistrial.

BY THE COURT:

I overrule your objection.

BY MR. TUCKER:

Q You know that Mr. Stewart has known for a considerable length of time that it was in violation of state law to engage in bookmaking, haven't you?

Stewart contends that, because the question was improper and unduly prejudicial, his conviction must be reversed.

 The government argues that it was only trying to show that both partners knew that their gambling activities violated state law, but it also indicates in its brief that defendants admitted having this knowledge "at the outset." The government therefore did not need to elicit evidence of Stewart's prior arrests and, because of its potentially prejudicial nature, should not have done so. *See United States v. Kaiser,* 545 F.2d 467, 476 (5th Cir. 1977). The trial judge instructed the jury, "Now these defendants are not on trial for any act or conduct which is not specifically alleged in this indictment." Wilkinson made

the challenged statement after he had described, on direct as well as cross-examination, his gambling partnership with Stewart and their in-state wagering activities. The discussion of Stewart's prior arrests was brief; the government elicited no details or explanations. Under these circumstances, we find that the testimony about Stewart's arrests was undoubtedly harmless. *See generally, United States v. Dawson,* 576 F.2d 656, 658 (5th Cir. 1978), *cert. denied,* 439 U.S. 1127, 99 S.Ct. 1043, 59 L.Ed.2d 88 (1979); *United States v. Herndon,* 536 F.2d 1027, 1030 (5th Cir. 1976); *Leonard v. United States,* 386 F.2d 423, 425 (5th Cir. 1967).

AFFIRMED.