**UNITED STATES of America, Appellee,**

v.

**Mark PRIESKORN, Appellant.**

**No. 80–1979.**

United States Court of Appeals,
Eighth Circuit.

Submitted March 13, 1981.

Decided Sept. 11, 1981.

---

Raymond Rosenberg (argued), Rosenberg & Margulies, Des Moines, Iowa, for appellant.

Judith A. Whetstine, Asst. U.S. Atty., N.D. Iowa, Cedar Rapids, Iowa, for appellee.

Before HEANEY, HENLEY and McMILLIAN, Circuit Judges.

McMILLIAN, Circuit Judge.

Mark Prieskorn appeals from a final judgment entered in the District Court for the Northern District of Iowa upon a jury verdict finding him guilty of conspiracy to possess with intent to distribute and to distribute cocaine, a controlled substance, in violation of 21 U.S.C. §§ 841, 846 and 18 U.S.C. § 2(a). The district court sentenced appellant to five years imprisonment. For reversal appellant argues the district court erred in (1) denying his motion for judg-

ment of acquittal and (2) refusing to give the jury his theory of defense instruction. Because we find the evidence was sufficient to support the conviction but agree with appellant that the district court erred in refusing to give the jury his theory of defense instruction, we reverse and remand for a new trial.

In February, 1980, a federal grand jury returned an indictment charging several individuals, including Leland Woodson Sims, Jr., Scott J. Haist, Randy Glenn Keeler, and John M. Papajohn, with various substantive drug violations and with conspiracy to possess with intent to distribute and to distribute cocaine. In May and June, 1980, the grand jury returned superseding indictments adding Andre K. DeLong, Robert Patterson, and appellant to the list of conspirators. Following plea bargaining, all of the defendants except Papajohn and appellant pleaded guilty. Papajohn remains a fugitive. Appellant alone went to trial on the conspiracy charge.

According to the government's theory of the case, about once a month from November, 1978, until February, 1980, Papajohn brought approximately a pound of cocaine from New York to Keeler, Haist, and Sims in Iowa. These three then distributed the cocaine in the Iowa City-Cedar Rapids area to other individuals, including Patterson and appellant. Although somewhat inconsistent with respect to the dates and quantities of various drug transactions, Keeler, Sims, and Patterson testified that in the spring or early summer of 1979 Patterson and appellant bought between ten ounces and a pound of cocaine at $1,750 per ounce through Sims from the Keeler-Haist-Sims "wholesale" group. They testified that appellant tested and examined the cocaine before purchasing it. They also agreed that only Patterson had known appellant before the actual transaction, that Patterson and appellant had made no prior agreement with Sims to purchase cocaine, and that neither Patterson nor appellant had ordered the cocaine. They testified that appellant was at least interested in future transactions. They also testified that the Keeler-Haist-Sims group, again through Sims, approached Patterson and appellant on two subsequent occasions, but that appellant refused to buy because the quality was poor and the cocaine had been processed with acetone instead of ether, which appellant allegedly preferred. Keeler testified that shortly thereafter he sold two ounces of cocaine through a third party to an undercover agent with the Drug Enforcement Administration. After further investigation, this prosecution followed.

## I. *Motion for Judgment of Acquittal*

■ Appellant first argues that the district court erred in denying his motion for judgment of acquittal. Appellant argues that the government's evidence was insufficient to establish that appellant had become a member of the conspiracy. Appellant characterizes his role in the events as that of a mere buyer and his relationship with the Keeler-Haist-Sims group as that of buyer and seller. Appellant correctly argues that the relationship between buyer and seller alone does not establish a conspiracy, *citing United States v. Varelli*, 407 F.2d 735 (7th Cir. 1969), *cert. denied*, 405 U.S. 1040, 92 S.Ct. 1311, 31 L.Ed.2d 581 (1972); *United States v. Ford*, 324 F.2d 950 (7th Cir. 1963). Appellant further argues that the evidence indicated only a single act and thus was insufficient to prove his membership in the conspiracy, *citing United States v. De Noia*, 451 F.2d 979 (2d Cir. 1971) (per curiam). We disagree.

■ "We must sustain the denial of a motion for a judgment of acquittal if a reasonable jury might decide that the evidence, examined in the light most favorable to the government, is inconsistent with every reasonable theory of the defendant's innocence." *United States v. Wilkinson*, 601 F.2d 791, 795 (5th Cir. 1979), *citing Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1 (1978). We have examined the record in the light most favorable to the government and find that the evidence was sufficient to establish that the conspiracy as charged existed and that appellant was a member of that conspiracy.

"For an accused to be convicted of unlawful conspiracy, there must be proof beyond a reasonable doubt that a conspiracy existed, that he [or she] knew of it, and that, with this knowledge, he [or she] voluntarily became a part of it." *United States v. Harbin*, 601 F.2d 773, 781 (5th Cir.) (citations omitted), *cert. denied*, 444 U.S. 954, 100 S.Ct. 433, 62 L.Ed.2d 327 (1979). Here there is no doubt that a conspiracy existed to possess with intent to distribute and to distribute cocaine. At issue was whether there was sufficient evidence that appellant knew of the conspiracy and knowingly became a member of the conspiracy.

> Intentional participation in a criminal conspiracy, however, "need not be proved by direct evidence; a common purpose and plan may be inferred from a 'development and a collocation of circumstances.'" Moreover, to be guilty of a single conspiracy, the "conspirators need not know each other or be privy to the details of each enterprise comprising the conspiracy ... as long as the evidence is sufficient to show that each defendant possessed full knowledge of the conspiracy's general purpose and scope."

*Id.* (citations omitted); *see also United States v. Middlebrooks*, 618 F.2d 273, 278–79 (5th Cir.), *cert. denied*, 449 U.S. 984, 101 S.Ct. 401, 66 L.Ed.2d 246 (1980).

Here there was ample evidence in the record to establish both appellant's knowledge of the conspiracy's general purpose and scope and his knowing participation in it. The testimony of Keeler, Sims, and Patterson indicated that appellant was interested in purchasing large quantities of cocaine; that appellant in fact purchased at least eight ounces, possibly as much as one pound, of cocaine on one occasion in 1979 from the Keeler-Haist-Sims group; that appellant was aware that the source of supply was Papajohn; and that appellant knew that local distribution was arranged through the Keeler-Haist-Sims group. In addition, appellant allegedly discussed the quantity and the quality of future shipments of cocaine with Papajohn at the time of the actual transaction.

We reject appellant's argument that the evidence disclosed only a buyer-seller relationship.

Because the crime of conspiracy requires a concert of action among two or more persons for a common purpose, the mere agreement of one person to buy what another agrees to sell, standing alone, does not support a conspiracy conviction.

> The relationship of buyer and seller *absent any prior or contemporaneous understanding beyond the mere sales agreement* does not prove a conspiracy to sell, receive, barter or dispose of stolen property although both parties know of the stolen character of the goods. In such circumstances, the buyer's purpose is to buy; the seller's purpose is to sell. There is no joint objective.

*United States v. Mancillas*, 580 F.2d 1301, 1307 (7th Cir.) (conspiracy to distribute and to possess with intent to distribute heroin), *cert. denied*, 439 U.S. 958, 99 S.Ct. 361, 58 L.Ed.2d 351 (1978), *citing United States v. Ford, supra*, 324 F.2d at 952 (conspiracy involving stolen goods; emphasis added).

However, the buyer-seller relationship cases upon which appellant relies involved only evidence of "a single transient sales agreement" and small amounts of drugs consistent with personal use. *See United States v. Mancillas, supra*, 580 F.2d at 1307; *accord, United States v. Watson*, 594 F.2d 1330, 1337 (10th Cir.), *cert. denied*, 444 U.S. 840, 100 S.Ct. 78, 62 L.Ed.2d 51 (1979); *cf. United States v. Martin*, 599 F.2d 880, 888–89 (9th Cir.) (person who attempts to purchase small amount of drug for personal use from a member of a conspiracy to sell that drug cannot be convicted by that act alone of facilitation of a conspiracy under 21 U.S.C. § 843(b)), *cert. denied*, 441 U.S. 962, 99 S.Ct. 2407, 60 L.Ed.2d 1067 (1979). The large quantity of cocaine involved [1] here supports an inference or pre-

---

**1.** The alleged conspiracy involved the distribution of a total of ten to fifteen pounds of co-

caine over a fourteen month period, a rate of approximately one pound of cocaine per

sumption that appellant knew that he was "a part of a venture which extend[ed] beyond his individual participation.... By virtue of this quantity the vertical nature [2] of the conspiracy was known to the suppliers and customers." *United States v. Magnano*, 543 F.2d 431, 434 (2d Cir. 1976) (citations omitted), *cert. denied*, 429 U.S. 1091, 97 S.Ct. 1100, 51 L.Ed.2d 536 (1977). Further, in addition to the evidence about the cocaine purchase, there was other evidence from which the jury properly could have found that there was an ongoing relationship between appellant and the Keeler-Haist-Sims group and Papajohn for the purpose of distributing cocaine as of the date of the actual purchase. There was testimony that indicated that appellant met with the Keeler-Haist-Sims group on two subsequent occasions to purchase cocaine in quantity and that appellant was interested in future shipments of cocaine. From all of this evidence the jury could reasonably have concluded that, contemporaneous with the cocaine purchase, there was an agreement with a common purpose.

For similar reasons we must also reject appellant's related argument that the evidence disclosed only a single act and was thus insufficient to support a conspiracy conviction.

The so-called single transaction rule recognizes that a single isolated act does not, *per se*, support an inference that a defendant had knowledge of, or acquiesced in, a larger conspiratorial scheme. It is only "when there is no independent evidence tending to prove that the defendant had some knowledge of the broader conspiracy and when the single transaction is not in itself one from which such knowledge might be inferred," that the single act is an insufficient predicate upon which to link the actor to the overall conspiracy.

*United States v. Magnano, supra*, 543 F.2d at 434–35 (citations omitted), *citing United States v. Agueci*, 310 F.2d 817, 836 (2d Cir. 1962), *cert. denied*, 372 U.S. 959, 83 S.Ct. 1013, 10 L.Ed.2d 11 (1963); *see also United States v. Torres*, 503 F.2d 1120, 1123–24 (2d Cir. 1974).[3] Here there was independent evidence tending to prove that appellant had some knowledge of the scope of the conspiracy. In addition the single act in question was in itself one from which appellant's knowledge of the conspiracy could be inferred. *See* note 1 *supra*.

monthly delivery. Appellant allegedly purchased at least eight ounces, perhaps as much as one pound, of cocaine. There was also testimony that appellant expressed some interest in future deliveries of cocaine in quantities of one pound per shipment. Given the quantity of cocaine allegedly involved in the transaction, there can be little doubt that appellant and the Keeler-Haist-Sims group were allegedly dealing in cocaine on a wholesale basis.

**2.** "Most narcotics networks involve loosely knit vertically-integrated combinations." *United States v. Panebianco*, 543 F.2d 447, 452–53 (2d Cir. 1976), *cert. denied*, 429 U.S. 1103, 97 S.Ct. 1128, 51 L.Ed.2d 553 (1977).

**3.** The alleged conspiracy in *United States v. Torres*, 503 F.2d 1120 (2d Cir. 1974), involved four known parties, one transaction and two attempted sales occurring over a three month period. The court noted that

[i]n a conspiracy of small scope, such as this one, the evidentiary value of a "single act" in inferring knowledge, particularly when, as here, the "act" included statements by the

defendant indicating his knowledge of the conspiracy and the "act" was one in which all the coconspirators were involved, is correspondingly greater than it would be in a broader conspiracy: the single act or transaction forms a larger proportion of the entire scheme. Thus, to speak of a "single act" is misleading; rather it is the qualitative nature of the act or acts constituting the single transaction (purchase, delivery, or the like) viewed in the context of the entire conspiracy which will determine whether an inference can be drawn as to the actor's knowledge of the scope of the conspiracy .... Thus conduct consisting only of involvement in a single transaction may nevertheless be treated as rationally permitting the inference of knowledge of the broader conspiracy where the single act itself shows so much familiarity with a high-level participation in the overall conspiracy as to be in and of itself indicative of the broader conspiracy.

*Id.* at 1124 (citations omitted).

## II. *Theory of Defense Instruction*

Appellant next argues that the district court erred in refusing to give the jury his theory of defense instruction.[4] We agree.

It is well established that a defendant in a criminal case is entitled to an instruction on his theory of the case if there is evidence to support it and a proper request is made. A proper request is one which is timely, is supported by the evidence and sets forth a correct statement of the law.

*United States ex rel. Means v. Solem,* 646 F.2d 322, 328 (8th Cir. 1980) (habeas corpus), *citing United States v. Manning,* 618 F.2d 45, 47–48 (8th Cir. 1980) (per curiam); *United States v. Brake,* 596 F.2d 337, 339 (8th Cir. 1979) (per curiam); *United States v. Rabbitt,* 583 F.2d 1014, 1024 (8th Cir. 1978), *cert. denied,* 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979). "The defendant need not testify nor offer any evidence or witnesses as a prerequisite to the trial court instructing as to the theory of defense. The foundation of the theory may rest upon evidence elicited from government witnesses either on direct or cross-examination." 8A Moore's Federal Practice ¶ 30.03[1], at 30–7 (2d ed. 1981) (footnote omitted). "A criminal defendant is entitled to have a jury instruction on any defense which provides a legal defense to the charge against him [or her] and which has 'some foundation in the evidence, even though the evidence may be weak, insufficient, inconsistent, or of doubtful credibility.'" *United States v. Creamer,* 555 F.2d 612, 616 (7th Cir.) (citation omitted), *cert. denied,* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977).[5]

■ Here appellant's request for his theory of defense instruction was timely and set forth a correct statement of the law. As discussed above, "proof of a buyer-seller relationship, without more, is inadequate to tie the buyer to a larger conspiracy such as is charged here." *United States v. Watson, supra,* 594 F.2d at 1337. There was also evidence to support the requested instruction. There was evidence indicating that appellant made only one purchase, that appellant did not know any of the alleged conspirators other than Patterson before the single purchase, and that appellant had not ordered the cocaine he actually bought. The government's case, in particular the extent of appellant's acquaintance with the Keeler-Haist-Sims group and Papajohn and appellant's interest in future deliveries and refusal to purchase on two subsequent occasions, depended exclusively upon alleged co-conspirators who were testifying on behalf of the government pursuant to plea bargain agreements. Under the circumstances we cannot say that a reasonable person might not conclude that the evidence supported appellant's requested buyer-seller instruction. *See United States v. Creamer, supra,* 555 F.2d at 616.

■ We find no other fault with the instructions which were given to the jury. We conclude only that the district court erred in refusing to give the jury the theory of defense instruction properly requested by appellant. We cannot say that the failure to so instruct the jury under the circumstances of the present case was harmless error. *But see United States v. Stephens,* 492 F.2d 1367, 1377 (6th Cir.), *cert. denied,* 419 U.S. 852, 95 S.Ct. 93, 42 L.Ed.2d 83 (1974). The evidence of appellant's guilt was strong; however, we leave to the jury the task of evaluating the credibility of the witnesses, the weight to be given their testimony and, following appropriate instructions, the adequacy of appellant's theory of defense.

---

4. Appellant's requested theory of defense instruction provided: "You are instructed that the relationship between a buyer and seller of drugs does not alone establish a conspiracy."

5. "[T]rial judges should be liberal in permitting the defendant's theory of defense to be explained to the jury, since such an instruction is a legitimate response to the indictment which is usually read with the instructions ...." *United States v. Brown,* 540 F.2d 364, 381 (8th Cir. 1976).

Accordingly, the judgment of the district court is reversed and the case is remanded for a new trial.

HENLEY, Circuit Judge, dissenting in part.

Part I of the majority opinion is entirely satisfactory, and with it I fully agree.

Moreover, it may be agreed that generally speaking a defendant is entitled to a "theory of defense" or "position" instruction and that trial courts should be liberal in giving them. But where a requested position instruction singles out one evidentiary fact issue, recital of position with respect to that issue may in fairness require elaboration so as to include other fact issues or aspects as well, and when no such elaborated instruction is requested or given refusal to give the original request is not necessarily error, much less reversible error. *United States v. Brown*, 540 F.2d 364 (8th Cir. 1976).

To be sure, there are cases holding that a single act such as an isolated purchase of a small quantity of drugs is insufficient to support a finding of participation in a conspiracy to distribute drugs; but even the single act cases hold that a single act may be the foundation for drawing the actor within the ambit of the conspiracy provided the act is such as to justify an inference of intent to participate in the unlawful enterprise. *See, e. g., United States v. Tramunti*, 513 F.2d 1087 (2d Cir. 1975), *citing United States v. Reina*, 242 F.2d 302 (2d Cir.), *cert. denied*, 354 U.S. 913, 77 S.Ct. 1294, 1 L.Ed.2d 1427 (1957) and *United States v. Aviles*, 274 F.2d 179 (2d Cir.), *cert. denied*, 362 U.S. 974, 80 S.Ct. 1057, 4 L.Ed.2d 1009 (1960).

As the majority opinion reflects, there were many evidentiary facts tending to support a finding of appellant's knowing membership and participation in an unlawful conspiracy, and the single act in question, a purchase of a large quantity of cocaine, was one from which appellant's knowledge of the conspiracy could be inferred.

1. *See* n.4 in majority opinion.

Thus, it becomes clear that the requested single act instruction [1] without elaboration could well have confused the jury by leading them to believe that the circumstances of the sale could not be the basis for any inference of guilty knowledge or intent.

The experienced trial judge obviously was mindful of problems in connection with instructions about the sale. The transcript reflects that the court considered giving an instruction on the amount of the purchase as it might tend to show intent to distribute. Ultimately the court chose not to mention specifics of the sale at all, but rather chose to leave such to argument and to cover the whole subject under other instructions, in particular Instruction No. 7. That instruction left the entire conspiracy matter to be considered in light of the actions and declarations of the alleged participants but with the admonition that "mere similarity of conduct among various persons, and the fact they may have associated with each other, and may have assembled together and discussed common aims and interests does not necessarily establish proof of a conspiracy."

The majority found no fault with the instruction given. With that conclusion there is no disagreement. In the circumstances of this case, however, I would go on to hold that there was no error in refusing appellant's requested instruction, and affirm the conviction.

Thus, with respect to Part II of the majority opinion I dissent.