900 F.2d 1211
 UNITED STATES of America, Appellee,
v.
Pedro Victor FIGUEROA, Appellant.
UNITED STATES of America, Appellant,
v.
Noemi HERNANDEZ-MESA, Appellee.
UNITED STATES of America, Appellee,
v.
Santiago SILVA, a/k/a Santiago Silva-Suarez, Appellant.
 Nos. 88-5460 to 88-5462.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Dec. 13, 1989.
Decided April 9, 1990.
 
 Paul Engh, Minneapolis, Minn., and William M. Orth, St. Paul, Minn., for appellants.
 Douglas R. Peterson, Minneapolis, Minn., for appellee.
 Before McMILLIAN, JOHN R. GIBSON and BOWMAN, Circuit Judges.
 JOHN R. GIBSON, Circuit Judge.
 
 
 1
 Pedro Victor Figueroa, Noemi Hernandez-Mesa, and Santiago Silva appeal their convictions on cocaine distribution and conspiracy charges. Figueroa and Silva were found guilty of aiding and abetting the distribution of cocaine in violation of 21 U.S.C. Sec. 841(a)(1) (1988) and 18 U.S.C. Sec. 2 (1988). Hernandez-Mesa was found guilty of possession with the intent to distribute cocaine in violation of 21 U.S.C. Sec. 841(a)(1). In addition, all three appellants were found guilty of conspiracy to distribute cocaine in violation of 21 U.S.C. Sec. 846 (1988). On appeal, they argue that the district court[1] erred by: (1) denying their motions for mistrial following the government's rebuttal argument; (2) rejecting the jury instructions they offered on the conspiracy charges; and (3) refusing to strike the portion of the indictment specifying the overt acts attributed to the appellants. In addition, Figueroa and Silva contend that the court abused its discretion in applying the United States Sentencing Guidelines. We affirm the district court's judgment in all respects.
 
 
 2
 Appellants' convictions arise from an undercover narcotics investigation conducted by the Minnesota Bureau of Criminal Apprehension in the St. Paul, Minnesota area. On March 29, 1988, Special Agent Eugene Leatherman purchased, using $1,500 in marked currency, one ounce of cocaine from Santiago Silva and Juan Joseph Aguirre in Aguirre's home. Leatherman returned to the Aguirre home the following day to purchase more cocaine, and Aguirre showed him two solid chunks of cocaine. Pedro Victor Figueroa then arrived and watched as Leatherman exchanged $3,000 in marked currency to Aguirre for the two chunks of cocaine after Leatherman was assured of the quality of the cocaine. The three individuals then negotiated a plan to exchange eighteen ounces of cocaine for $14,000 and a stolen automobile in the near future. Figueroa did not speak English fluently but participated actively in the negotiations, and Aguirre informed Leatherman that Figueroa would be returning to Miami soon to acquire more cocaine. Throughout this discussion, Leatherman reported that he heard Figueroa continually clicking the safety of a gun concealed in his pocket. Figueroa also carried a pager. In an Oldsmobile registered to Noemi Hernandez-Mesa, the final co-defendant, Figueroa then returned to an apartment which was leased in her name. Government surveillance of the apartment revealed that Silva met Figueroa at the door when he returned.
 
 
 3
 The following day, March 31, 1988, Leatherman again returned to the Aguirre residence to complete the large cocaine transaction previously discussed. Silva waited in the Hernandez-Mesa Oldsmobile while Figueroa and Aguirre accompanied Leatherman to the basement where Figueroa displayed ten ounces of cocaine in pressed kilogram form to Leatherman. Figueroa and Aguirre broke off negotiations, however, when they became dissatisfied with the manner in which Leatherman was attempting to arrange the transaction. Figueroa left with the cocaine, which he described as "my coke," and Silva picked him up in the Oldsmobile. Police officers stopped the vehicle, found the cocaine in the front seat console between the two men, and discovered a loaded .25 caliber pistol at Silva's feet. Silva was carrying a pager with Aguirre's telephone number on its display screen.
 
 
 4
 Simultaneous with the vehicle search, police searched the Hernandez-Mesa apartment pursuant to a warrant. Among other things, they found the following: (1) a triple beam scale and cutting agent in the bathroom; (2) a large number of plastic bags, six of which contained a total of thirty grams of cocaine, some of which had Hernandez-Mesa's fingerprints on them; (3) $3,370 in cash in a shoe box in a closet and $12,945 in cash in a man's suit jacket; (4) a gray bag containing six ounces of cocaine with Figueroa's and Silva's fingerprints on it; (5) a loaded .38 caliber revolver and a box of bullets in a closet; and (6) Hernandez-Mesa's address book containing Aguirre's telephone number, a letter addressed to Aguirre, and drug notes referring to Hernandez-Mesa. When Hernandez-Mesa herself was searched, police found another pager and, in her purse, Western Union money transfers bearing the names of Figueroa and Silva.
 
 
 5
 Figueroa, Silva, Aguirre,[2] and Hernandez-Mesa were arrested, tried jointly, and found guilty after a jury trial. Figueroa and Silva were each sentenced to ninety-seven months and Hernandez-Mesa to thirty-six months. This appeal followed.
 
 I.
 
 6
 Appellants contend that the district court erred by denying their motions for a mistrial based upon certain remarks during the government's rebuttal argument. Essentially, they argue that these remarks exceeded the bounds of propriety and denied them their right to a fair trial. Specifically, they object to the following statement made by the prosecutor in rebuttal argument:
 
 
 7
 Members of the jury, what is most significant about the arguments of the defense counsel, the fact that Mr. Wernick [attorney for Hernandez-Mesa] got up and said, "Not my client. It's all the men in the courtroom." Mr. Engh [attorney for Figueroa] got up and said, "Not my client. Mr. Aguirre, Mr. Silva, Hernandez-Mesa, the other three defendants." Mr. Rosas [attorney for Aguirre] gets up and he says, "Huh-uh, not 705 East Magnolia. It's those three people over at 1434 Case; Figueroa, Silva, Hernandez-Mesa." And Mr. Orth [attorney for Silva] stands up, and he says, "Huh-uh, not Mr. Silva. It's Mr. Figueroa, Hernandez-Mesa, perhaps, and certainly Mr. Aguirre."
 
 
 8
 Those arguments confirm, members of the jury, is [sic] that all four defendants are co-conspirators.
 
 
 9
 (Tr. V at 704) (emphasis added). After these remarks were made, the attorneys for all four co-defendants objected and moved for a mistrial, describing this as a "guilt by association" argument and an improper attempt to establish that they were co-conspirators based upon their denials of individual guilt. The court denied these motions.
 
 
 10
 After these objections, the prosecutor made the following statement:
 
 
 11
 In any event, members of the jury, again, it is the evidence that will control. The government asks you to look at the evidence in making the determination of whether or not the four defendants are co-conspirators.
 
 
 12
 (Tr. V at 705). After a lunch break, the court gave the following instruction to the jury concerning the rebuttal argument:
 
 
 13
 Ladies and gentlemen, just prior to our break for lunch, there was an objection which was made to a portion of the argument made by the prosecutor, and I want to give you a particular instruction.
 
 
 14
 It is imperative that you understand that each person who is accused in a United States courtroom is to be judged separately. The mere fact that they're tried together doesn't indicate that they took part in a crime or that they took part in a crime together.
 
 
 15
 You may be called upon, and will be, to make decisions on those issues in this case, but those decisions must be based only on a [sic] independent review of the facts as they relate, and one of the charges involves both aiding and abetting, or one of them involves aiding and abetting, and others involve kinds of conspiracy, and those are charges where people work together.
 
 
 16
 But you will have to determine from the facts that they did. If you find that they did work together, and you will have to find whether or not they conspired, and in a moment I will tell you about conspiracy, but that determination is not based on whether or not they're tried together or whether they said other people did it. It's only based on the evidence which you find proven in this Court. I wanted to tell you that.
 
 
 17
 If there was any contrary suggestion, I specifically instruct you, you are not to consider that and may not consider an argument along that line.
 
 
 18
 (Tr. V at 708-09).
 
 
 19
 It is often stated that an attorney representing the United States is obligated to try a case fairly and, "while he may strike hard blows, he is not at liberty to strike foul ones." Berger v. United States, 295 U.S. 78, 88, 55 S.Ct. 629, 633, 79 L.Ed. 1314 (1935); see United States v. O'Connell, 841 F.2d 1408, 1428 (8th Cir.1988) ("the prosecutor's special duty as a government agent is not to convict, but to secure justice"), cert. denied, --- U.S. ----, 109 S.Ct. 799, 102 L.Ed.2d 790 (1989). The Supreme Court has cautioned the government to abstain from arguments which are "undignified and intemperate, containing improper insinuations and assertions calculated to mislead the jury." Berger, 295 U.S. at 85, 55 S.Ct. at 633.
 
 
 20
 The grant or denial of a mistrial may be reversed only upon a showing of abuse of discretion. O'Connell, 841 F.2d at 1427. On appeal, we conduct a two-part inquiry concerning the alleged prosecutorial misconduct: "[W]e consider whether the remarks were in fact improper and, if so, whether they prejudicially affected the defendants' substantial rights so as to deprive them of a fair trial." Id.
 
 
 21
 When we apply this analysis here, we are compelled to conclude that the prosecutorial remarks were indeed improper, but not to an extent unfairly prejudicial to the appellants. The government contends that its rebuttal argument was merely a fair reply to the inconsistent defense theories raised by defense counsel in their summations. See, e.g., United States v. Young, 470 U.S. 1, 6-14, 105 S.Ct. 1038, 1041-45, 84 L.Ed.2d 1 (1985) (discussing the "invited reply" doctrine). Certainly the government has a right to respond to defense arguments. See United States v. Grey Bear, 883 F.2d 1382, 1390-92 (8th Cir.1989); United States v. Scott, 660 F.2d 1145, 1168-70 (7th Cir.1981), cert. denied, 455 U.S. 907, 102 S.Ct. 1252, 71 L.Ed.2d 445 (1982). We are not convinced, however, that this argument was merely a fair reply to defense arguments. The argument referred to opposing counsels' arguments and was not based upon the evidence in the case. It went beyond proper comment by suggesting an inference of guilt based upon defense counsels' arguments rather than focusing upon the evidence in the case.
 
 
 22
 In assessing the prejudicial impact of the prosecutorial misconduct, we consider the following: "1) the cumulative effect of the misconduct; 2) the strength of the properly admitted evidence; and 3) the curative actions taken by the trial court." United States v. Andrade, 788 F.2d 521, 530-31 (8th Cir.1986), cert. denied sub nom. 479 U.S. 963, 107 S.Ct. 462, 93 L.Ed.2d 408 (1986).
 
 
 23
 The appellants point to a single, isolated remark here in a trial extending over four days. The improper argument was followed immediately by objection and by counsel moving quickly to proper argument. (Tr. V at 704-05). This is not a case like Berger, which involved a prosecutor who repeatedly made improper remarks in argument. See 295 U.S. at 84-89, 55 S.Ct. at 631-33. We must view the prosecutorial misconduct in the context of the entire trial, United States v. Dawkins, 562 F.2d 567, 568 (8th Cir.1977), and when we do so, particularly in light of the substantial and persuasive evidence of guilt, we conclude that the misconduct was no more than harmless error. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 239-42, 60 S.Ct. 811, 851-53, 84 L.Ed. 1129 (1940).
 
 
 24
 Moreover, we are satisfied that the court's curative actions here dispelled any potential for undue prejudice stemming from the improper remarks. Immediately after the appellants objected, the court admonished the prosecutor to "Move along," (Tr. V. at 705), and instructed the jury soon thereafter in detail that the appellants' joint trial did not mean that they participated in a crime together nor did their claims that the others were responsible for the charged crimes mean that they were joined in a conspiracy. (Tr. V at 708-09). Finally, the jury instructions also emphasized that arguments of counsel are not themselves substantive evidence. (Tr. V at 713).
 
 
 25
 Accordingly, we hold that the prosecutor's remarks, although improper, were not so prejudicial as to deprive the appellants of a fair trial.
 
 II.
 
 26
 Appellants argue that the district court erred by rejecting the jury instructions which they submitted on the law of conspiracy. Instead, the court gave the Eighth Circuit Model Jury Instruction[3] to explain the law of conspiracy.
 
 
 27
 We first observe that a court is granted wide discretion in formulating its charge to the jury, United States v. Walker, 817 F.2d 461, 463 (8th Cir.1987), cert. denied, 484 U.S. 863, 108 S.Ct. 181, 98 L.Ed.2d 134 (1987). Moreover, on appeal, we must consider the instructions as a whole in assessing their adequacy. United States v. Casperson, 773 F.2d 216, 223 (8th Cir.1985). In this light, we are satisfied that the court did not abuse its discretion.
 
 
 28
 Relying on United States v. Prieskorn, 658 F.2d 631, 633-35 (8th Cir.1981), the appellants argue, in essence, that the court failed to emphasize that a mere buyer cannot be deemed a co-conspirator. Hernandez-Mesa, in particular, sought to advance the argument that she bought cocaine from her co-defendants only for her own use, and not to distribute it. Figueroa and Silva contend that the jury could have found that they performed a limited role as sellers but did not enter into a distribution scheme. We do not believe that an instruction based upon Prieskorn was warranted on the facts of this case. In Prieskorn, there was evidence that the defendant had made only one narcotics purchase, that the defendant knew only the seller before the sale and not the others involved, and that the defendant had not requested the purchase in advance. Id. at 636.
 
 
 29
 In this case, by stark contrast, there was evidence that Hernandez-Mesa shared living quarters with Figueroa and Silva at the time of the offenses charged here, and that she transferred money by wire to Figueroa. The search of her residence yielded a pager, a scale, a cutting agent, plastic bags, over $15,000 in cash, a drug note containing her name, individually-wrapped packages of cocaine, and a plane ticket evidencing recent travel by Hernandez-Mesa from Florida to Minnesota. Moreover, the police found no evidence of paraphernalia typically associated with cocaine use, as opposed to distribution. Concerning Figueroa and Silva, the record clearly establishes that their roles went far beyond involvement in a limited buyer-seller relationship. Considering the record before us, we believe that the district court properly exercised its discretion in refusing to emphasize the buyer-seller theory of Prieskorn.
 
 
 30
 We also note that the instructions provided ample opportunity for the jury to consider the defense theory that the cocaine was purchased for personal use and not for distribution. The court's charge expressly required the jury to find that each appellant joined in an agreement to distribute and possess with the intent to distribute cocaine, and that each understood that purpose. (Tr. V at 738-39).
 
 
 31
 The appellants also allege that the court erred in instructing the jury because it refused to submit certain additional instructions offered on the law of conspiracy. The rejected instructions emphasized that mere association with conspirators does not rise to the level of participating in the conspiracy. We believe that the instruction given sufficiently communicated this principle. The court instructed the jury that:
 
 
 32
 [Y]ou should understand that merely being present at the scene of an event, or merely acting in the same way as others, or merely associating with others, does not prove that a person has joined in the agreement or the understanding.
 
 
 33
 (Tr. V at 738-39).
 
 
 34
 The additional instructions offered by appellants would have merely reiterated, rather than clarified, this statement of the law.
 
 
 35
 The appellants also claim that the court erred by rejecting their instruction on the law of multiple conspiracies. The rejected instruction told the jury that proof of several conspiracies was not proof of the overall conspiracy charged and that it should acquit a defendant found to be a member of a conspiracy other than the one charged in the indictment. The court instructed the jury as follows:
 
 
 36
 If the government has failed to prove beyond a reasonable doubt the existence of the conspiracy which is charged, then you must find the defendants not guilty, even though some other conspiracy might have existed.
 
 
 37
 Likewise, if the government has failed to prove beyond a reasonable doubt that defendant was a member of a conspiracy which was charged, then you must find that defendant not guilty, even though he may have been a member of some other conspiracy.
 
 
 38
 (Tr. V at 740).
 
 
 39
 We are satisfied that this instruction correctly stated the law on multiple conspiracies and sufficiently conveyed the principles urged by appellants. The appellants describe various combinations of their actions which could constitute separate conspiracies; these creative manipulations of the facts, however, are unavailing in light of the substantial evidence of a single conspiracy.III.
 
 
 40
 Appellants contend that the court also erred by failing to strike the portion of the indictment which specified the overt acts allegedly committed in furtherance of the conspiracy. The indictment, which was submitted to the jury, listed eighteen overt acts allegedly committed by the appellants. Appellants claim that they were unfairly prejudiced by the jury's exposure to this section of the indictment and, as evidence of this, they point out that the jury asked the court whether it could "use the grand jury's overt acts" in their deliberations and, if so, whether they could be "used as evidence." (Tr. V at 748-49). The court instructed the jury that the list of overt acts could not be viewed as evidence. (Tr. V at 749).
 
 
 41
 Under 21 U.S.C. Sec. 846, the government is not required to either allege or prove that a conspirator committed an overt act in furtherance of the conspiracy. See United States v. Covos, 872 F.2d 805, 809-10 (8th Cir.1989), cert. denied, --- U.S. ----, 110 S.Ct. 124, 107 L.Ed.2d 85 (1989). A motion to strike surplusage from an indictment, however, is a matter within the district court's discretion. Dranow v. United States, 307 F.2d 545, 558 (8th Cir.1962); see also United States v. Anderson, 579 F.2d 455, 456 n. 2 (8th Cir.), cert. denied, 439 U.S. 980, 99 S.Ct. 567, 58 L.Ed.2d 651 (1978).
 
 
 42
 Dranow instructs us that a motion to strike surplusage from an indictment "should be granted only where it is clear that the allegations contained therein are not relevant to the charge made or contain inflammatory and prejudicial matter." 307 F.2d at 558. We are satisfied that the overt act allegations here were neither irrelevant nor inflammatory and prejudicial because they closely paralleled the evidence adduced at trial. Significantly, appellants fail to cite a single instance where an overt act allegation overstates the evidence presented or refers to inadmissible evidence.
 
 
 43
 The district court repeatedly emphasized to the jury that an indictment's allegations do not constitute evidence at trial. The court stressed this six times during voir dire. (Tr. I at 21, 38, 45, 54, 62, 69). Prior to deliberations, the court informed the jury that "the indictment itself is simply a formal method of accusing a defendant of a crime. The indictment is not evidence of any kind against the defendant." (Tr. V at 724). We believe that the court properly exercised its discretion in its treatment of the overt acts issue.
 
 IV.
 
 44
 Figueroa and Silva contend that the court erred by increasing their offense levels under the Sentencing Guidelines for possessing a firearm and performing an aggravating role in the offenses.
 
 
 45
 Under Guideline section 2D1.1(b)(1), the offense level is increased by two if a defendant possesses a firearm while committing a drug offense. The court's conclusion that both Figueroa and Silva possessed guns during the offense is a finding of fact which we review under the clearly erroneous standard. 18 U.S.C. Sec. 3742(e)(4) (1988); United States v. Green, 889 F.2d 187, 188 (8th Cir.1989). Our review of the record convinces us that the contention of appellants is untenable. As previously stated, Agent Leatherman heard Figueroa clicking the safety of a gun in his pocket during the March 30 transaction. When police stopped the Oldsmobile driven by Silva on March 31, they found a .25 caliber semi-automatic pistol under Silva's car seat. Furthermore, when they searched the apartment, they discovered a second firearm, a loaded .38 caliber revolver, in the closet of Figueroa's bedroom. There was no clear error in the court's findings on these sentencing issues.
 
 
 46
 As authorized by Guideline section 3B1.1, the district court also increased both Figueroa's and Silva's offense levels because of their managerial roles in the offenses. We review this finding under the clearly erroneous standard also and find this assertion equally meritless. The record reveals that both Figueroa and Silva were present to monitor drug sales and that both recruited accomplices. There was evidence that Silva managed the financial aspects of the drug venture and that Figueroa actively participated in negotiations. This evidence, as well as other evidence in the record, convinces us that the court did not err in increasing their offense levels for their aggravating roles.
 
 
 47
 Figueroa also asserts that the court should have reduced his offense level because he performed a minimal role in the offense. This argument is patently untenable in light of the court's finding that he played an aggravating role, which we affirmed above. In addition, Figueroa argues that the court should have departed downward in sentencing him because of certain circumstances not adequately taken into consideration by the Guidelines. We do not address this argument, however, as this issue is nonreviewable. United States v. Evidente, 894 F.2d 1000, 1003 (8th Cir.1990).
 
 
 48
 Finally, Silva contends that the court should not have refused his request to lower his offense level under Guideline section 3E1.1 for acceptance of responsibility. The court found that Silva's apology to the court after his conviction and before sentencing was both untimely and insincere. "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation." U.S.S.G. Sec. 3E1.1, comment. (n. 5). We defer to the court's judgment on this issue because we believe it has a foundation.
 
 V.
 
 49
 Having carefully considered all of appellants' arguments, we believe that they are without merit and, therefore, affirm the district court's judgment in all respects.
 
 ADDENDUM
 
 50
 The Eighth Circuit Model Jury Instruction given by the district court provides as follows:
 
 
 51
 As I told you, the crime charged in this case in Count V is criminal conspiracy. A criminal conspiracy is a kind of a criminal partnership, an agreement, or an understanding between two or more persons to do something that is unlawful. The crime is carried out, even if the agreement or understanding is not successfully carried out. The crime is the making the agreement and participating in the agreement to commit a crime.
 
 
 52
 The crime of criminal conspiracy, as applied in this case, has three essential elements, and they are first, that on or about the date or dates charged in the indictment, two or more persons, including the defendants here, reached an agreement or an understanding to commit a crime, and particularly here the distribution and possession with intent to distribute cocaine.
 
 
 53
 In connection with this element, it is not necessary that the defendant have been among the original parties to the agreement or the understanding.
 
 
 54
 Further, in order for persons to reach an agreement or an understanding, as required, it is not necessary that the particular agreement or understanding be in writing or in any particular form, and it is not necessary that there be an agreement or an understanding or even discussion on how all of the details of the agreement or understanding are to be carried out.
 
 
 55
 Two, the second element, that a defendant joined in the agreement or the understanding either at the time it was first made or at some later time, but while it was still in effect.
 
 
 56
 In connection with this element, however, you should understand that merely being present at the scene of an event, or merely acting in the same way as others, or merely associating with others, does not prove that a person has joined in the agreement or the understanding.
 
 
 57
 But in order to join in that agreement or understanding, as required in this element, a person does not have to know all of the details of the agreement or understanding and does not have to know the identity of all of the people involved.
 
 
 58
 Further, it is not necessary that a person agree to play a particular part in carrying out the agreement, or the understanding.
 
 
 59
 Third element. That at the time a person or a defendant joined in that agreement or understanding, he or she knew the purpose of the agreement and the understanding.
 
 
 60
 To convict a defendant of criminal conspiracy, the government must prove each of those essential elements beyond a reasonable doubt as to each defendant. If the government has done so, you must find the defendant guilty of the crime charged in Count V.
 
 
 61
 On the other hand, if the government has failed to prove each of those essential elements beyond a reasonable doubt as to that particular defendant, you must find that defendant not guilty of the charge of the crime which is charged in Count V.
 
 
 62
 To assist you in determining whether there was an agreement or an understanding to commit the crimes of distribution and possession with intent to distribute controlled substances as required, in element one, you are advised that the elements of the crime of cocaine distribution are as follows:
 
 
 63
 First, that the defendants at the time charged in the indictment distributed or caused to be distributed a controlled substance.
 
 
 64
 And second, that the defendant did so knowingly and intentionally, as indicated above, the elements of the crime of possession with intent to distribute cocaine are as follows--that's just a straight repeat? That's what's known as a typo. All right.
 
 
 65
 And third, that the defendant did the acts knowingly and intentionally.
 
 
 66
 If the government has failed to prove beyond a reasonable doubt the existence of the conspiracy which is charged, then you must find the defendants not guilty, even though some other conspiracy might have existed.
 
 
 67
 Likewise, if the government has failed to prove beyond a reasonable doubt that defendant was a member of a conspiracy which was charged, then you must find that defendant not guilty, even though he may have been a member of some other conspiracy.
 
 
 68
 (Tr. V at 737-40).
 
 
 
 [1]
 The Honorable James M. Rosenbaum, United States District Court Judge for the District of Minnesota
 
 
 [2]
 Aguirre elected to waive his appeal
 
 
 [3]
 This jury instruction is set out in the Addendum to this opinion