972 F.2d 355
 NOTICE: Eighth Circuit Rule 28A(k) governs citation of unpublished opinions and provides that they are not precedent and generally should not be cited unless relevant to establishing the doctrines of res judicata, collateral estoppel, the law of the case, or if the opinion has persuasive value on a material issue and no published opinion would serve as well.
UNITED STATES of AMERICA, Appellee,
v.
Howard A. MCCOWAN, Appellant.
 No. 91-3109MN.
 United States Court of Appeals,
Eighth Circuit.
 Submitted: May 13, 1992.
Filed: July 7, 1992.
 
 Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.
 PER CURIAM.
 
 
 1
 Howard McCowan appeals his convictions for narcotics-related offenses. McCowan claims that the convictions should be reversed because the district court[1] erred in denying his motion to suppress evidence found in the trunk of his car and in failing to give his requested jury instruction.[2] We reject McCowan's arguments and affirm his convictions.
 
 
 2
 McCowan was arrested at the same time as two co-defendants who had been under investigation by the Drug Enforcement Administration (DEA). An undercover DEA agent had purchased cocaine base from the two co-defendants on four prior occasions, each sale occurring in the parking lot of a White Castle in Minneapolis. Based on these purchases and his investigation, the DEA agent obtained arrest warrants for the two co-defendants and, on February 27, 1991, contacted them to arrange the final buy. The parties agreed that they would again meet in a White Castle parking lot and that one of the co-defendants, Alex Twiddy, would bring the cocaine base to the DEA agent's car where the sale would occur. Shortly after the arrangements were finalized, surveillance officers observed the co-defendants and McCowan leave a house in St. Paul and get into a Cadillac. The three men then drove to an apartment complex, parked the Cadillac, and got into a Chevrolet Impala, which McCowan drove to the designated White Castle in Minneapolis. The undercover DEA agent was waiting for them. By coincidence, a uniformed Minneapolis police officer also was at the White Castle. After the uniformed officer left, Twiddy entered the DEA agent's car to consummate the deal. As prearranged with his back-up officers, the DEA agent told Twiddy that he had to get the money out of his trunk. When the agent opened the trunk, the back-up officers moved in for the arrest.
 
 
 3
 The officers arrested the co-defendants, for whom they had arrest warrants, and McCowan. A search of the co-defendant that remained in the Impala uncovered additional drugs and $780. A search of McCowan uncovered a pager. Prior to towing the Impala, officers also performed an inventory search of the car. When one of the officers opened the trunk, he saw the barrel of a gun in a partially opened gray bag. A search of the bag revealed a semi-automatic assault rifle and ammunition. The two co-defendants and McCowan subsequently were indicted for conspiracy to distribute cocaine base, possession of cocaine base with intent to distribute, and use of a firearm during a drug trafficking crime.
 
 
 4
 Prior to trial, McCowan brought a motion to suppress the weapons discovered in the trunk of his Impala. He claims that this evidence was the fruit of an unlawful arrest, or, alternatively, that the officers had no justifiable basis for searching the trunk of his car. The district court denied his suppression motion, finding that the arrest was supported by probable cause and that the search of the trunk was a valid inventory search. At trial, the district court also denied McCowan's requested jury instruction regarding "mere presence" at the scene of a crime. The district court found that McCowan's instruction merely repeated what already was contained in the court's proposed instructions. Following trial, a jury returned a guilty verdict on all three counts. McCowan appeals his convictions claiming that the district court erred in refusing to suppress the evidence found in his trunk and in refusing to give his requested jury instruction. We affirm.
 
 II.
 A. Suppression of Evidence
 
 5
 McCowan makes two alternative arguments as to why the evidence found in the trunk was not properly admissible. He initially claims that the discovery of this evidence was the "fruit" of his unlawful arrest. A warrantless arrest is proper if it is supported by probable cause. "Probable cause exists where the facts and circumstances within the arresting officers' knowledge are sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense." United States v. Archer, 840 F.2d 567, 573 (8th Cir.), cert. denied, 488 U.S. 941 (1988). The district court concluded that probable cause for the arrest existed. We must uphold its finding unless it is clearly erroneous. Id. at 574. On the day of his arrest, police officers observed McCowan leave a house with two persons who had just arranged a drug deal, drive with the two persons to another vehicle, get in this new vehicle, drive the two persons to the designated scene of the deal, and then wait in the car while the deal went down. Additionally, the officers had no indication that McCowan drove from St. Paul to Minneapolis because he was craving White Castle cuisine. Based on these facts, the officers reasonably could have concluded that McCowan was knowingly aiding his co-defendants in the drug deal. We thus have no problem upholding the district court's finding that probable cause existed. See United States v. Clark, 754 F.2d 789, 791-92 (8th Cir. 1985) (upholding a finding of probable cause to arrest a wife who accompanied her husband to a drug deal, and waited in the car while the sale occurred).
 
 
 6
 Alternatively, McCowan claims that, even if his arrest was valid, the officers lacked any basis for searching the trunk of his car. The district court concluded that the search of the trunk constituted a valid inventory search.[3] We review this finding for clear error. A warrantless inventory search is valid if it was conducted pursuant to standardized police procedures, and not in bad faith or for the sole purpose of investigation. Colorado v. Bertine, 479 U.S. 367, 372 (1987). The officers who searched McCowan's Impala testified that police policy required them to impound the vehicle and to record its contents in an inventory diary. The officers further testified that they were in the process of recording the car's contents in the inventory diary when they discovered the weapons in the trunk. McCowan introduced no evidence to contradict this testimony. Rather, McCowan asserts that the inventory search was conducted as a pretext for a generalized search for evidence. His support for this argument is that the inventory search closely followed the arrest of the car's three inhabitants, and the car eventually was returned to him.
 
 
 7
 We are not convinced that the district court clearly erred in finding that the officers conducted a valid inventory search. As long as the officers are following standardized police procedures, performing the inventory search prior to towing rather than at the impoundment lot does not make the search unlawful. See Colorado, 479 U.S. at 368-69 (upholding inventory search that occurred before vehicle towed). Moreover, even assuming that the officers suspected that the Impala contained additional contraband when they conducted the search, "[a]n officer's suspicion that evidence may be present does not invalidate an otherwise lawful inventory search." United States v. Porter, 859 F.2d 83, 85 (8th Cir. 1988) (per curiam). Accordingly, we uphold the district court's denial of McCowan's suppression motion.
 
 B. Jury Instruction
 
 8
 McCowan also argues that the district court erred in refusing to give his requested jury instruction on "mere presence" at the scene of the crime. District courts exercise wide discretion in formulating jury instructions, and this court reviews a denial of a proposed instruction only for an abuse of discretion. E.g., United States v. Figueroa, 900 F.2d 1211, 1216 (8th Cir.), cert. denied, 110 S. Ct. 3228 (1990). In assessing jury instructions for reversible error, the court considers the instructions as a whole. Id. In this case, the district court refused to give McCowan's proposed instruction because it repeated what was already contained in the instructions. We have reviewed both the proposed instruction and the instructions given to the jury and conclude that McCowan's "mere presence" theory of defense was clearly included in the charge to the jury. Accordingly, we find no abuse of discretion by the district court.
 
 III.
 
 9
 In conclusion, we believe that the district court did not error in denying McCowan's motion to suppress or his requested jury instruction. Accordingly, we affirm his convictions.
 
 
 
 [1]
 The Honorable Diana E. Murphy, United States District Judge for the District of Minnesota
 
 
 [2]
 In a pro se brief, McCowan also raises a claim of ineffective assistance of trial counsel and a claim of insufficiency of the evidence to support his firearms conviction. We find no merit to these claims
 
 
 [3]
 The district court also concluded that the seizure and search of the car were valid under the forfeiture statute, 21 U.S.C. § 881 (1988). We need not reach this issue