# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3847

_____

United States of America,           *

                      *

        Appellee,        *

                      *   Appeal from the United States

    v.                  *   District Court for the

                      *   District of South Dakota.

Mahdi Hakim, also known as    *

Damon Hargrove,          *

                      *

        Appellant.      *

_____

Submitted: March 13, 2007
Filed: June 21, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Mahdi Hakim was convicted of conspiring to possess with the intent to distribute over 50 grams of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846, and received the statutory minimum sentence of life imprisonment. Hakim appeals from his conviction, arguing that the district judge[1] erred by denying his motion for judgment of acquittal based on the sufficiency of the evidence. We affirm.

_____

[1]The Honorable Lawrence L. Piersol, then Chief Judge, United States District Court for the District of South Dakota.

## I. Background

We state the facts in the light most favorable to the jury's verdict. This case originated in a drug-related investigation and arrest of one of Hakim's childhood acquaintances, Ronnie Shaw, who was arrested after attempting to sell crack cocaine to a police informant. Following his arrest, and to secure a lighter sentence, Shaw provided information and testimony implicating Hakim in a drug conspiracy.

At Hakim's trial, in which Shaw was the central government witness, Shaw testified to the following facts based on his experiences and conversations with Hakim. Although Hakim was living in Kansas City in early 2004, he had been "dealing [crack cocaine] with" Shaw's aunt, Frieda Brown, in Sioux Falls. Hakim's supplier was in Kansas City. Brown had recently "crossed" Hakim, however, and so Hakim needed someone in Sioux Falls who could help him expand his drug business. Hakim traveled to Sioux Falls in April of 2004 and contacted Shaw with the hope of recruiting him because Shaw was a twenty-year resident of the city who "knew people." The two men did not initially reach an agreement, but on the following day Hakim fronted Shaw a quarter ounce of cocaine to sell. Within a week, Shaw sold the quarter ounce and paid Hakim, after which Hakim fronted Shaw an additional ounce of cocaine, which Shaw also agreed to sell. After selling the crack, Shaw wired Hakim his agreed upon share of the proceeds ($2,300) via Western Union on May 10, 2004.[2]

On May 16, 2004, Hakim and Shaw were driving together when they were pulled over for an equipment violation. The officer found marijuana and charged

---

[2]The government introduced undisputed documentary evidence and testimony confirming the date, sender, location of the pick up, and amount of money involved in this Western Union transaction. According to the undisputed evidence, Hakim picked up the money in Kansas City.

Hakim with a minor marijuana offense that required his presence in court on May 27, 2004. Hakim traveled back to Kansas City during the interim period. After Shaw wired him additional money, Hakim brought additional crack cocaine with him when he returned for his court appearance.

Near the end of the conspiracy, the two unsuccessfully attempted to obtain crack cocaine from a source closer to Sioux Falls. They then traveled together to Kansas City and purchased four and one-half ounces of powder cocaine, brought it back to Sioux Falls, and converted it into crack.[3] Shaw received an ounce of crack in return for a $500 contribution toward the powder cocaine purchase, and Hakim kept the remainder. Hakim resided in Shaw's apartment while the pair resumed selling crack. After two or three days, Hakim returned to Kansas City for a family emergency, taking with him some of his cocaine and leaving behind the remainder, which law enforcement found when they arrested Shaw. All told, Hakim fronted crack cocaine to Shaw approximately six times, usually in one-ounce increments.

The government additionally presented phone records indicating not only that Shaw had Hakim's number programmed into his primary cell phone, but also that there had been 121 telephone contacts between the two men during the dates of the alleged conspiracy.

II.

We review the sufficiency of the evidence de novo, "viewing evidence in the light most favorable to the government, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict." United States v. Washington, 318 F.3d 845, 852 (8th Cir. 2003) (citation omitted). The standard of review is strict. We will uphold the verdict "if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond

_____

[3]Four and one-half ounces equals approximately 125 grams.

a reasonable doubt." United States v. Hamilton, 332 F.3d 1144, 1149 (8th Cir. 2003) (citing United States v. Gillings, 156 F.3d 857, 860 (8th Cir. 1998)); see also Jackson v. Virginia, 443 U.S. 307, 319 (1979).

Hakim argues that Shaw's testimony is incredible and should not believed, especially in light of Shaw's motivation to give false testimony and Hakim's own testimony that provided what he contends to be the real reasons for his visits to Sioux Falls, his phone conversations with Shaw, and the money transfers. His argument must fail. "The test for rejecting evidence as incredible is extraordinarily stringent and is often said to bar reliance only on testimony asserting facts that are physically impossible." United States v. Crenshaw, 359 F.3d 977, 988 (8th Cir. 2004); see also United States v. Lanier, 578 F.2d 1246, 1251 (8th Cir. 1978) ("Appellate review of credibility is prohibited absent extraordinary circumstances." (citation omitted)). There is nothing so incredible about Shaw's testimony to warrant its rejection as a matter of law.

Credibility aside, to sustain the verdict in a criminal case there must still be evidence sufficient to prove the elements of the crime beyond a reasonable doubt. Crenshaw, 359 F.3d at 987 (citing Jackson, 443 U.S. at 313-20). A conviction for conspiracy requires the "government [to] prove beyond a reasonable doubt that there was an agreement to achieve some illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became a part of the conspiracy." United States v. Nelson, 165 F.3d 1180, 1184 (8th Cir. 1999) (quoting United States v. Cabrera, 116 F.3d 1243, 1244 (8th Cir. 1997)). Intentional participation of a criminal conspiracy need not be proved by direct evidence and may be inferred from the facts and circumstances. United States v. Prieskorn, 658 F.2d 631, 634 (8th Cir. 1981) (citing United States v. Harbin, 601 F.2d 773, 781 (5th Cir. 1979)); see also United States v. Winston, 456 F.3d 861, 866 (8th Cir. 2006) ("Direct evidence of an explicit agreement is not necessary to prove a conspiracy; instead, a tacit understanding among co-conspirators may be, and often will be, inferred from circumstantial evidence." (internal quotation omitted)).

-4-

Hakim contends that a single buyer-seller transaction is insufficient to prove participation in, or knowledge of, a conspiracy. Cf. Prieskorn, 658 F.2d at 634 (noting that without more, an isolated buyer-seller transaction involving a small amount of drugs consistent with personal use does not, per se, support an inference of participation in a conspiracy). Hakim's reliance on Prieskorn for this legal principle is misplaced in light of his participation in a number of drug-related dealings and activities with Shaw and the involvement of a quantity of drugs clearly not intended for personal use. See id., 658 F.3d at 634-35 (finding the so called buyer-seller transaction rule inapplicable where a sizeable quantity of drugs was involved). The evidence indicates that (1) Hakim and Shaw had an ongoing, long-term, mutually profitable relationship during which Shaw relied on Hakim for obtaining cocaine and Hakim relied on Shaw for distributing it to his Sioux Falls contacts; (2) Hakim knowingly sought out Shaw precisely to enter into such a relationship; and (3) the two repeatedly acted in concert pursuant to this shared purpose and understanding. From this, a jury could find beyond a reasonable doubt that Hakim was part of an illegal drug conspiracy.

The judgment is affirmed.

_____