# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-2128

_____

United States of America,             *
                                      *
            Appellee,                 *
                                      *   Appeal from the United States
      v.                              *   District Court for the
                                      *   District of Minnesota.
Carlos Lattrell McAdory,              *
                                      *
            Appellant.                *

_____

Submitted: May 15, 2007
Filed: September 6, 2007

_____

Before LOKEN, Chief Judge, JOHN R. GIBSON, and WOLLMAN, Circuit Judges.

_____

WOLLMAN, Circuit Judge.

Carlos Lattrell McAdory appeals from his convictions stemming from his involvement in nine bar robberies. A jury convicted him of conspiring to commit robbery affecting interstate commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951(a); aiding and abetting and committing robbery affecting interstate commerce, in violation of 18 U.S.C. §§ 2, 1951(a), and 3559(c); using and aiding and abetting the use of a firearm in a crime of violence, in violation of 18 U.S.C. §§ 2, 924(c)(1)(A), and 3559(c); and being a felon in possession of a firearm, in violation of 18 U.S.C. §§

922(g)(1) and 924(e).  The district court[1] sentenced McAdory to multiple consecutive life sentences.  We affirm.

## I. Background

Between December 30, 2002, and May 23, 2004, McAdory participated in nine armed robberies of eight different bars in and around St. Paul and Minneapolis, Minnesota.  He committed seven robberies in combination with various others, including Tavaughn Combs, Clyde Minor, and Lamont Gross, and he committed his final two robberies alone.  According to the trial testimony, the first seven robberies were preceded by some amount of preparation.[2]  The robbers typically adopted identifiable roles.  If there were three participants, for example, one would usually remain in the getaway car, another would control the bar staff and patrons, and the last would search for the money.   They subsequently shared the money that they stole.

## II.  Analysis

On appeal, McAdory argues that the government failed to offer sufficient evidence of a conspiracy and of a Hobbs Act violation, that his right to a speedy trial

---

[1]The Honorable Joan N. Ericksen, United States District Judge for the District of Minnesota.

[2]Gross had, for example, been "learning the ropes" when he joined McAdory in a robbery of J&P's bar.  For this reason, he and McAdory engaged in more extensive planning and discussion prior to acting.  By their next robbery, which was of a bar called the Commercial Club, Gross felt like he had learned what he needed to know, and the two did not discuss and plan "to the extent [that they did for] J&P's . . . ."  Trial Tr. at 806.

was violated, and that he received ineffective assistance of trial counsel.[3]  We address each claim in turn.

## A. Sufficiency of the Evidence

McAdory contends that the evidence was insufficient to support the jury's verdict because the government failed to prove an effect on interstate commerce, and that McAdory entered into an agreement to commit armed robbery.[4]  These contentions lack merit.

We "review a challenge to the sufficiency of the evidence *de novo* and view the evidence in the light most favorable to the government, resolving evidentiary conflicts in favor of the government, and accepting all reasonable inferences drawn from the evidence that supports the jury's verdict."  United States v. Flores, 474 F.3d 1100, 1105 (8th Cir. 2007) (citation and internal quotation omitted).

---

[3]McAdory additionally contends that the district court erred by denying his various pre-trial motions.  This contention is unsupported by specific reasons, citations to the record, or relevant legal authority.  Because "[n]otice pleadings do not suffice for appellate briefs," we consider these alleged errors waived.  United States v. Tracy, 989 F.2d 1279, 1286 (1st Cir. 1993) (noting that undeveloped issues perfunctorily adverted to in an appellate brief are waived); see also Fed. R. App. P. 28(a)(9)(A).

[4]McAdory also appears to contend that the Hobbs Act does not encompass armed robberies of businesses.  This contention is directly at odds with well-settled law.  See, e.g., United States v. Dobbs, 449 F.3d 904, 907 (8th Cir. 2006) (taking money from a convenience store's cash register at gunpoint is a Hobbs Act robbery).  In every robbery McAdory committed, money was taken either directly from others or in the presence of others.

i. Hobbs Act

The relevant portion of the Hobbs Act imposes a fine or imprisonment on anyone who "in any way or degree obstructs, delays, or affects commerce . . . , by robbery or extortion or attempts or conspires so to do . . . ." 18 U.S.C. § 1951. We have recognized that "a statute with an express jurisdictional nexus to interstate commerce may be applied in circumstances where the actual connection to interstate commerce is small." Dobbs, 449 F.3d at 912. "[R]obberies from small commercial establishments qualify as Hobbs Act violations so long as the commercial establishments deal in goods that move through interstate commerce." Id. (affirming a Hobbs Act conviction for the robbery of a stand-alone, mom-and-pop convenience store). Payments on insurance claims from out-of-state insurers covering the loss from a robbery may also serve as relevant evidence establishing an effect on interstate commerce. United States v. Williams, 308 F.3d 833, 839 (8th Cir. 2002).

The bar robberies meet the required threshold. The record indicates that every bar robbed was covered by an out-of-state insurer, and all but one filed an insurance claim and received a reimbursement from their respective insurer. The one bar that did not submit an insurance claim suffered "quite a bit" of a business slowdown at night because "older people [were] afraid to come out." Trial Tr. at 607. A similar effect on business was reported by each of the other bars as well. Because the sale of out-of-state beer was a primary source of revenue at every bar robbed by McAdory, the reduction in business had a direct effect on the demand by these bars for an out-of-state commercial product. In light of the foregoing, the robberies involved a sufficient nexus to interstate commerce to qualify as Hobbs Act violations.[5]

---

[5]McAdory also appears to harbor the incorrect belief that the money taken from the bars during the robberies must itself have a bearing on interstate commerce in order to implicate the Hobbs Act. The Hobbs Act, in fact, requires only that the government show that a robbery affected interstate commerce. If that showing is made, the Act does not place any preconditions on the quality, nature, or relevance to

## ii. Conspiracy

There was also sufficient evidence that McAdory conspired to commit the robberies at issue. To establish a conspiracy, the government must prove beyond a reasonable doubt that (1) there was an agreement to achieve an illegal purpose, (2) that the defendant knew of the agreement, and (3) that the defendant knowingly participated in the conspiracy. United States v. Hakim, No. 06-3847, 2007 WL 1774615, at *2 (8th Cir. June 21, 2007) (citation omitted). A conspiracy need not be established by direct evidence of an explicit agreement; instead, a "'tacit understanding among co-conspirators may be, and often will be, inferred from circumstantial evidence.'" Id. (quoting United States v. Winston, 456 F.3d 861, 866 (8th Cir. 2006)).

The testimony of Combs, Minor, and Gross outlining their discussions with McAdory, describing the various activities engaged in before, during, and after each robbery, and, when applicable, narrating events depicted in surveillance recordings, constitutes direct evidence supporting a conspiracy conviction. Circumstantial evidence also supports a conspiracy finding. In the two instances where their criminal efforts were caught on tape, the recordings depict individuals working in concert. The testimony of the bar staff and patrons likewise supports the inference of concerted action.[6]

interstate commerce of the specific property taken. See 18 U.S.C. § 1951; see also Dobbs, 449 F.3d at 912 (requiring only that the commercial victim deal in interstate goods).

[6]McAdory offers interpretations of testimony that suggest that Gross and McAdory did not act together (or at least did not do so in concert), and he argues that Gross's testimony should not be believed. Given the evidence and permissible inferences supporting a conspiracy, these interpretations and contentions are irrelevant under the applicable standard of review. See, e.g., United States v. Flores, 474 F.3d 1100, 1105 (8th Cir. 2007) (stating the sufficiency of the evidence standard of

B. The Speedy Trial Act

McAdory was arrested pursuant to a federal complaint on June 4, 2004. On June 22, 2004, the government and McAdory's then-counsel, Robert Richman, filed a joint motion for preindictment delay to permit McAdory time to decide if he wanted to take advantage of a preindictment resolution of the charges against him.[7] A magistrate judge granted the motion, finding that a thirty-day delay served the interest of justice. Because McAdory did not accept the proposed resolution, a grand jury returned an indictment against him on July 28, 2004. On September 7, 2004, after McAdory had received new counsel, he filed seventeen pretrial motions – not one of which included a motion to dismiss the charges based on preindictment delay or on a Speedy Trial Act violation. See 18 U.S.C. § 3161 (2000). On October 19, 2004, a third superseding indictment was returned against McAdory, charging him with the nine robberies presently at issue. He filed additional pretrial motions, but again did not assert a Speedy Trial Act violation. McAdory did not raise the issue until several months after the verdict was delivered.

We will not reach the merits of McAdory's Speedy Trial Act claim, however, because he waived his right to assert it by failing to move for dismissal before trial.

_____

review); Hakim, 2007 WL 1774615, at *2 ("appellate review of credibility is prohibited absent extraordinary circumstances" (quoting United States v. Lanier, 578 F.2d 1246, 1251 (8th Cir. 1978))).

[7]McAdory contends that the joint motion was fraudulently filed by the government without Richman's consent. His sole support of this contention is the fact that Richman's signature does not appear on the motion. Aside from the omitted signature, McAdory at no point presented an affidavit from Richman or any other proof that Richman did not agree to the delay. The magistrate judge's order itself suggests that both McAdory's counsel and the government consented to the delay. Finally, Richman never objected to the motion or to the resulting order, which further supports an inference of his consent. In these circumstances, McAdory has failed to adequately support his allegation of fraud.

See 18 U.S.C. § 3162(a)(2) (2000) ("Failure of the defendant to move for dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under this section."); see also United States v. McFarland, 116 F.3d 316, 318 (8th Cir. 1997).

## C. Ineffective Assistance of Trial Counsel

Finally, McAdory alleges that his trial counsel failed to retain an investigator and conduct an investigation, failed to interview any witnesses, and failed to follow McAdory's directions regarding possible witnesses for use in his defense. On account of these and other alleged failures, McAdory asserts that he did not receive effective assistance of trial counsel. We ordinarily defer ineffective assistance of counsel claims to 28 U.S.C. § 2255 proceedings. United States v. Hughes, 330 F.3d 1068, 1069 (8th Cir. 2003) ("Except where a miscarriage of justice would obviously result or the outcome would be inconsistent with substantial justice, ineffective assistance of counsel issues are more appropriately raised in collateral proceedings . . . ." (quotation omitted)). Although some of his allegations may not require further factual development, many do. Because justice does not beckon us to rule on some of his allegations now while leaving the remainder to future proceedings, we reject his ineffective assistance of trial counsel claim without prejudice.

The judgment is affirmed.

_____