# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

—————————

No. 10-1062

—————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff - Appellee, | * | Appeal from the United States |
| | * | District Court for the Western |
| v. | * | District of Arkansas. |
| | * | |
| Norman Bates Hatchett, | * | |
| | * | |
| Defendant - Appellant. | * | |

—————————

Submitted: September 24, 2010
Filed: September 28, 2010

—————————

Before RILEY, Chief Judge, MURPHY and MELLOY, Circuit Judges.

—————————

MURPHY, Circuit Judge.

Norman Hatchett pled guilty to eight counts of wire fraud, in violation of 18 U.S.C. § 1343. The district court[1] sentenced him to serve 108 months and ordered him to pay $1,568,135.06 in restitution. Hatchett appeals, contending that the court erred in determining the number of victims of his investment fraud scheme and the amount of loss resulting from it. We affirm.

---

[1] The Honorable Jimm Larry Hendren, Chief Judge, United States District Court for the Western District of Arkansas.

From August 2005 to March 2007, Hatchett operated an investment fraud scheme involving the alleged sale of commodities and foreign currencies. Through an organization titled the Luca Fund, Hatchett promised investors a 20% monthly return on a six month investment. The investors were told they could then choose to take their profit or reinvest it. Hatchett's bank records show that he accepted over $6 million in investments from 114 different persons or corporations during the course of his scheme. The investors were located primarily in Australia, with a few in Singapore and in the United States. They wired funds to Hatchett in Arkansas, who would then wire the funds overseas, supposedly for the purpose of currency trading. He paid some initial investors with funds received from later investors, but he stopped all payments in January 2007. Hatchett also ceased accepting investments at that time.

Hatchett was charged in October 2008 with eight counts of wire fraud, in violation of 18 U.S.C. § 1343, and two counts of money laundering, in violation of 18 U.S.C. § 1957. Pursuant to a plea agreement, Hatchett pled guilty to eight counts of wire fraud and the remaining two counts of money laundering were dismissed.

At sentencing, the district court found Hatchett's base offense level to be seven. Enhancements were then added: eighteen levels because the loss exceeded $2,500,000; four levels because the offense involved more than fifty victims; two levels for committing a substantial part of the fraudulent scheme outside the United States; and two levels for abusing a position of trust. After applying a three level adjustment for acceptance of responsibility, Hatchett's adjusted offense was thirty. Based on a criminal history category of I, the court calculated an advisory guideline range of 97 to 121 months. Thereafter the court sentenced Hatchett to 108 months, a $150,000 fine, and $1,568,135 in restitution. Hatchett timely appealed.

Hatchett first challenges the four level enhancement for more than fifty victims. We review a district court's "interpretation and application of the guidelines de novo

and its findings of fact for clear error." United States v. Jenkins-Watts, 574 F.3d 950, 960 (8th Cir. 2009). USSG § 2B1.1(b)(2) provides for a four level increase in offense level if an offense involves more than fifty victims. The term "victim" is defined by the guidelines as "any person who sustained any part of the actual loss" resulting from the offense, which may include "individuals, corporations, companies, associations, firms, partnerships, societies, and joint stock companies." U.S.S.G. § 2B1.1(b)(2), cmt. n. 1.

The district court relied on Hatchett's guilty plea and the testimony of a Federal Bureau of Investigation (FBI) agent for its application of the four level enhancement. The indictment to which Hatchett pled guilty had alleged that "[a]pproximately 80 individuals" invested in Hatchett's scheme. At sentencing, the FBI agent who had reviewed and analyzed Hatchett's bank records testified that 114 persons and corporations had wired money into the two bank accounts Hatchett used to operate his scheme. The agent also testified that the FBI had sent email questionnaires to all those investors for whom it could obtain contact information. Fifty two individuals and one corporation responded and provided information about their losses resulting from Hatchett's scheme. Based on the bank records, testimony at the sentencing hearing, and Hatchett's admissions, the court found that Hatchett's scheme had between 110 and 120 victims.

Hatchett argues that because he had objected to the government's asserted number of victims, the government was required to provide direct evidence at sentencing about each of the investors counted by the court as victims. He relies on United States v. Hartstein, 500 F.3d 790 (8th Cir. 2007). We stated there that if the parties disagree as to the amount of victims or loss and the defendant claims an investor "was not, in fact, a victim of fraud", the government must present evidence as to the circumstances of that particular investor. Id. at 796. Here, Hatchett has never contended that he accepted money for any purpose other than his fraudulent scheme, and he has not challenged the characterization of any specific investor as a

victim. Thus the government need not present direct evidence about the circumstances of each alleged victim. Id. The district court did not err in finding that the testimony at sentencing, bank records, and Hatchett's admissions were sufficient to establish the number of victims by a preponderance of the evidence.

Hatchett also contests the court's decision to count as separate victims each member of the married couples who responded to the FBI questionnaire. Although we apparently have not yet had occasion to decide whether it is appropriate to count married persons as individual victims to a defendant's fraudulent scheme, see United States v. Straw, __ F.3d __, 2010 WL 3034766, at *3–4 (8th Cir. Aug. 5, 2010), we cannot say that the district court erred here given the facts of this case. The court counted as separate victims only those married individuals who had reported losses to the FBI questionnaire. See United States v. Ellisor, 522 F.3d 1255, 1275 (11th Cir. 2008) (recognizing that husband and wife count as separate victims where each sustains "part of the actual loss").

The government presented sufficient evidence to prove by a preponderance of the evidence that Hatchett's scheme involved more than fifty victims. The district court specifically found from the record that there had been between 110 and 120 victims. It thus did not err in applying a four level enhancement. See United States v. Farrington, 499 F.3d 854, 859 (8th Cir. 2007).

Hatchett also contests the district court's loss calculation, which increased his guideline range and his restitution obligations. A sentencing court must calculate a "reasonable estimate of the loss based upon a preponderance of the evidence." United States v. Boesen, 541 F.3d 838, 850 (8th Cir. 2008); see also U.S.S.G. § 2B1.1 cmt. n. 3(C) ("the court need only make a reasonable estimate of the loss"). The district court imposed an eighteen level enhancement here for a loss exceeding $2,500,000, but less than $7,500,000. We review its loss calculation for clear error. United States v. Erhart, 415 F.3d 965, 970 (8th Cir. 2005).

The amount of fraud loss for sentencing purposes is "the greater of the loss the defendant intended at the time of the fraud, or the actual loss." Farrington, 499 F.3d at 860. The district court determined that the total loss amount of Hatchett's offense was $6,495,658.06, which reflected the total amount of money wired into the accounts Hatchett used to operate his scheme.

Hatchett argues that he should be credited for $4,927,523 in repayments made during the course of his operation and that the loss amount for sentencing purposes should equal the actual, not intended, loss. He again relies on Hartstein for the court's conclusion that the defendant's intent should control when determining whether to credit repayments to a defendant's total loss amount. 500 F.3d at 797. Hartstein provides that "when a defendant's only subjective intent regarding repayments relates to this illegal purpose of perpetuating the scheme", then the district court may appropriately refuse credit for repayments. Id. at 800.

The district court followed Hartstein's guidance when making its loss determination. The court examined the plea agreement, under which Hatchett had admitted he had engaged in a scheme to defraud without any intention of making the legitimate investments promised to investors. The court also found that Hatchett chose to repay his initial investors with funds from later investors in order to keep the initial investors satisfied and to attract others. Finally the court noted a portion of the presentence investigation report to which Hatchett did not object, which stated that "there was never any intent by Mr. Hatchett in making any repayments that he made to actually try to compensate his victims." The court found that Hatchett's subjective intent in making the repayments was to further his scheme. Under Hartstein, the court was permitted within its discretion to refuse to credit Hatchett's payments against his loss amount. 500 F.3d at 800.

When reviewing a district court's loss determination, we grant "particular deference to the district court's loss calculations because of its unique ability to assess

the evidence and estimate the loss." United States v. Fazio, 487 F.3d 646, 659 (8th Cir. 2007). We conclude that the district court made a reasonable estimation of the loss in this case and that its decision not to deduct Hatchett's repayments was supported by the record. We affirm the district court's imposition of an eighteen level enhancement for the loss amount involved in Hatchett's scheme.

Accordingly, we affirm the judgment of the district court.

_____