# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-1080

_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　Plaintiff - Appellee,　　　*
　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　v.　　　　　　　　　　　　　　*　District Court for the
　　　　　　　　　　　　　　　　　*　District of Nebraska.
Otis Jones, also known as Junior,　*
　　　　　　　　　　　　　　　　　*
　　　　Defendant - Appellant.　　*

_____

Submitted:  November 17, 2010
Filed:  January 12, 2011

_____

Before RILEY, Chief Judge, MELLOY and GRUENDER, Circuit Judges.

_____

MELLOY, Circuit Judge.

Otis Jones pleaded guilty to conspiring to distribute and possessing with intent to distribute 50 grams or more of cocaine base and 500 grams or more of cocaine powder.  The district court[1] sentenced Jones to 151 months' imprisonment.  Jones appeals his sentence.  He argues that the district court should not have adjusted his offense level for having possessed a "dangerous weapon" in connection with the conspiracy, and he also argues that the district court should have given him credit for

_____

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

the time he spent in state custody prior to the imposition of his federal sentence. We affirm.

## I. Background

From roughly January 2007 to January 2009, Jones participated in a conspiracy to distribute crack and powder cocaine in Lincoln, Nebraska. On January 20, 2009, the Lincoln Police Department executed search warrants for two residences where Jones occasionally stayed. At one of the residences, officers found crack cocaine and other drug paraphernalia. Jones admitted the items were his, and Nebraska authorities charged Jones with possession of cocaine.

As a result of these events, Jones violated the terms of probation that he was under due to a 2007 state-court conviction for possession of a firearm by a felon. As a result of his probation violation, a Nebraska judge sentenced Jones to three to six years of prison on February 17, 2009.

On February 19, 2009, a grand jury indicted Jones for conspiring to distribute and possessing with intent to distribute 50 grams or more of crack cocaine and 500 grams or more of powder cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1), 846. The grand jury also indicted Jones on two separate counts of possessing crack cocaine with intent to distribute, but the government moved to dismiss these two counts after Jones pleaded guilty to the conspiracy charge.

For sentencing purposes, the base offense level for Jones's conspiracy charge was thirty-two. The district court found that Jones possessed a "dangerous weapon"—namely, a firearm—in connection with the conspiracy, which increased Jones's base offense level to thirty-four. Jones received a three-level decrease for acceptance of responsibility, resulting in a total offense level of thirty-one. Jones had a criminal history category IV, so the district court determined that the advisory

guideline sentencing range was 151-181 months' imprisonment. The district court imposed 151 months' imprisonment and ordered the sentence to run concurrently with Jones's state sentence. However, the district court did not give Jones any credit for the time he spent in state custody prior to the imposition of his federal sentence.

Jones raises two issues on appeal. First, Jones argues that the district court erred by finding that Jones possessed a weapon in connection with his conspiracy to distribute crack and powder cocaine. Second, Jones argues that the district court erred by not giving him credit for at least some of the time that he spent in state custody prior to the imposition of his federal sentence.

## II. Discussion

### A.

Jones first argues that the district court erred by finding that he possessed a firearm in connection with his conspiracy to distribute crack and powder cocaine. Section 2D1.1 of the Sentencing Guidelines outlines the appropriate offense levels for drug-trafficking crimes. Under section 2D1.1(b), a two-level increase is appropriate if a defendant possessed a dangerous weapon in connection with a drug-trafficking crime. United States v. Anderson, 618 F.3d 873, 879–80 (8th Cir. 2010). We review the district court's determination that Jones possessed a firearm in connection with his conspiracy to distribute crack and powder cocaine for clear error. Id. at 879.

At the sentencing hearing, the government sought to prove the applicability of the dangerous-weapon enhancement through the testimony of two witnesses: Christopher Reynolds and Robert Swift. Reynolds testified that he sold crack cocaine to Jones two to three times per week from January through July of 2007. According to Reynolds, every time he sold crack to Jones, Jones was in possession of a gun. Although Reynolds was unsure whether the gun was a nine millimeter or .45 caliber

pistol, Reynolds testified that he saw Jones possessing a gun in at least three separate locations: on the table of Jones's apartment, on the floorboard of Jones's vehicle, and in Jones's waistband. Swift testified that he dealt crack cocaine to Jones two to three times per week from August 2007 until March 2008. On at least two or three of those occasions, Swift testified that he saw Jones in possession of a gun. The district court found that a sufficient amount of Reynolds's and Swift's testimony was credible to justify imposition of the two-level dangerous-weapon enhancement.

Jones argues that Swift and Reynolds were not credible witnesses. We are highly deferential to a district court's assessment of witness credibility. United States v. Johnson, 601 F.3d 869, 872 (8th Cir. 2010). As such, district court decisions in this regard are "virtually unreviewable on appeal." Id. (internal quotations omitted). A district court's finding that a witness's testimony is credible is only error in extreme circumstances, such as when the witness testified to facts that are physically impossible. United States v. Hakim, 491 F.3d 843, 845 (8th Cir. 2007).

Jones first contends Reynolds and Swift were unreliable because they had signed cooperation agreements and were testifying in hope that they would receive sentence reductions on then-pending charges to which they had pleaded guilty. However, the government had not actually promised Reynolds or Swift that they would receive sentence reductions in exchange for testifying, and even if it had, this would not have necessarily made the testimony unreliable. United States v. Boyce, 564 F.3d 911, 915 (8th Cir. 2009).

Jones also contends that Swift's testimony was unreliable because Swift made inconsistent statements regarding what type of gun Jones possessed. Initially, Swift testified at the sentencing hearing that Jones possessed a .38 caliber revolver. In a prior interview, however, Swift had stated that Jones possessed a .45 caliber pistol and had said nothing about Jones possessing a .38 caliber revolver. After being questioned about the prior interview, Swift continued to testify at the sentencing

hearing that he saw Jones with a gun on two or three occasions, but admitted that he was no longer sure whether Jones had possessed a .38 caliber revolver or a .45 caliber pistol.

Although Swift was clearly unsure about what type of gun Jones possessed, he consistently and unequivocally stated Jones was in possession of a gun. The two-level enhancement of section 2D1.1(b) applies regardless of what type of gun Jones possessed. Therefore, in light of Swift's consistent statements that Jones possessed a gun, we do not find Swift's uncertainty regarding what type of gun Jones possessed to be a basis for rejecting the district court's determination that Swift was credible.

Finally, Jones argues that both Reynolds and Swift were unreliable because they testified as having seen Jones possessing guns at times when they could not have possibly done so because Jones was incarcerated. Specifically, Jones notes that he was incarcerated for roughly thirty-five days in January and February 2007, a brief period of days in April 2007, and from July 30, 2007, until December 30, 2007. As a result, it was impossible for Reynolds to have been selling crack to Jones two to three times per week from January 2007 through February 2007, and it was impossible for Swift to have been selling crack to Jones two to three times per week from August 2007 to December 2007.

We agree with Jones that Reynolds and Swift probably testified inaccurately as to the dates that they sold crack cocaine to Jones. However, not all of Reynolds's and Swift's testimony consisted of facts that were "physically impossible" to have been true. Specifically, Reynolds and Swift testified that they sold crack cocaine to Jones on dates while he was not incarcerated. On these occasions, Reynolds testified that Jones always had a gun, while Swift testified that Jones had a gun two or three times. The district court was allowed to reject portions of Reynolds's and Swift's testimony that were not credible and accept other portions of testimony that were credible. Boyce, 564 F.3d at 916. Since it was not "physically impossible" that Reynolds and

Swift observed Jones possessing a gun during drug transactions on dates when Jones was not incarcerated, we find no error in the district court's credibility findings. As a result, the district court did not commit clear error by imposing the two-level dangerous-weapon enhancement.

B.

Next, Jones argues that the district court improperly applied section 5G1.3(c) of the Sentencing Guidelines. According to Jones, a proper application of section 5G1.3(c) would have resulted in the district court "run[ning] [his] sentence concurrent with the state sentence as of at least the date of the arraignment on the Indictment," which was February 26, 2009, or the date he was taken into state custody, which was January 21, 2009. We review the district court's interpretation of the Guidelines de novo and its findings of fact for clear error. United States v. Hatchett, 622 F.3d 984, 986 (8th Cir. 2010).

When a defendant is already subject to an undischarged term of imprisonment, section 5G1.3(c) allows a sentencing judge to impose a sentence that runs "concurrently, partially concurrently, or consecutively to the prior undischarged term of imprisonment." In this case, the district court gave Jones a sentence that ran concurrently with Jones's state sentence from the date the federal sentence was imposed.[2] Had the district court run the federal sentence "concurrently" from any date prior to the date the federal sentence was imposed, then the district court would have been giving Jones credit for the time he had served in state custody. Section 5G1.3(c), however, does not allow sentencing judges to do this. Only section

---

[2] The district court ran Jones's sentence concurrently with Jones's state sentence despite the fact that the commentary to the Guidelines recommends that sentencing judges run sentences consecutively in circumstances such as Jones's. U.S.S.G. § 5G1.3 cmt. n.3.C (2010).

5G1.3(b) allows sentencing judges to give defendants credit for a "period of imprisonment."

The district court properly chose to apply section 5G1.3(c) rather than section 5G1.3(b). Pursuant to section 5G1.3(b), a sentencing judge may credit a defendant with a period of imprisonment that he has already served on an undischarged term of imprisonment if the undischarged sentence "resulted from another offense that [1] is relevant conduct to the instant offense of [federal] conviction . . . and that [2] was the basis for an increase in the offense level for the instant offense." Whether an undischarged sentence was imposed for another offense that is "relevant conduct to the instant offense" for purposes of section 5G1.3(b) is a question of fact. United States v. Burch, 406 F.3d 1027, 1030 (8th Cir. 2005).

Jones was serving an undischarged term of imprisonment for a state charge of possession of a firearm by a felon. Jones admitted at his sentencing hearing that this offense did not increase the offense level for his drug-conspiracy charge. Jones's only argument that the possession-of-a-firearm-by-a-felon charge was "relevant conduct" to the drug-conspiracy charge is that the drug-conspiracy charge arose from conduct that triggered the revocation of probation and the imposition of a sentence on the state conviction. This fact, however, does not make the state conviction "relevant conduct" to the federal conviction for purposes of section 5G1.3(b). See United States v. Fifield, 432 F.3d 1056, 1062–63 (9th Cir. 2005) (noting that the fact that the conduct underlying a federal charge resulted in the revocation of probation and imposition of imprisonment on a state conviction does not mean that the conduct underlying the state conviction is "relevant" to the federal conviction for purposes of section 5G1.3(c)); see also United States v. Broadnax, 536 F.3d 695, 702 (7th Cir. 2008) (implying the same). Therefore, the district court did not commit clear error by finding section 5G1.3(b) inapplicable. As a result, the district court did not misapply section 5G1.3(c) by not crediting Jones for the time he had served in state custody prior to the date the federal sentence was imposed.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

_____