# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 11-2958
_____

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
Teresa Tremusini,　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*


_____

No. 11-3331
_____

Appeals from the United States
District Court for the
Eastern District of Missouri.

United States of America,　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellee,　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　v.　　　　　　　　　　　　　*
　　　　　　　　　　　　　　　　　*
Robert Scott Gray,　　　　　　　　*
　　　　　　　　　　　　　　　　　*
　　　　　　　Appellant.　　　　　　*

_____

Submitted:　March 16, 2012
　　　Filed:　July 31, 2012
_____

Before RILEY, Chief Judge, SMITH and SHEPHERD, Circuit Judges.

_____

RILEY, Chief Judge.

Robert Scott Gray and Teresa Tremusini committed various crimes related to schemes to defraud the United States Postal Service (USPS). Gray, who pled guilty, appeals certain sentencing evidentiary rulings and the district court's[1] loss calculation with respect to his sentence. Tremusini was convicted following a jury trial and now appeals the district court's (1) admission of particular out-of-court statements made by Gray, (2) refusal to give Tremusini's requested jury instructions, and (3) denial of her motion for a judgment of acquittal. We affirm.

## I.    BACKGROUND
### A.    Factual Background[2]
#### 1.    Fraud

Gray was the owner of SG Print & Mail, Inc. (SG Print), which provided direct mail services for its clients. The clients paid SG Print to prepare direct mailings by addressing each mail piece and sorting the mail pieces by address and zip code for bulk mailing. Tremusini was the Festus, Missouri, Postmaster from December 2005 to December 2006. From 2005 through 2007, Gray defrauded the USPS using two schemes.[3] Both schemes involved Donna Beckman, an SG Print employee, taking SG Print's bulk mailing forms to the Festus Post Office for approval. While the schemes

_____

[1]The Honorable Rodney W. Sippel, United States District Judge for the Eastern District of Missouri.

[2]"We present the facts [against Tremusini] in the light most favorable to the jury's verdict." United States v. Fuller, 557 F.3d 859, 862 (8th Cir. 2009).

[3]In sentencing Gray, the district court referred to three schemes, but two are variations on the same scheme.

were ongoing, Gray paid $10,000 to Michael Jones, a supervisor at the Festus Post Office, and made two $10,000 payments to Tremusini.

Bulk postage can be paid using several methods. One method is affixing a unique authorized mailing permit imprint indicia on the mail itself. Another method is using stamps. The mailer must prepare a Form 8125 for each destination post office, listing the method of payment for each piece mailed to that post office, and a Form 3602, which summarizes the Form 8125s. The bulk mailer must deliver the mailing and two sets of each form to a postal worker, who is responsible for verifying the accuracy of the forms. Postal employees stamp one set of the forms and return them to the mailer, keeping the other set for USPS records. The mailer pays the total postage due, minus the value of any stamps used, as indicated on the Form 3602.

The mailer has the option of transporting the mail to the destination post offices instead of having USPS do so. SG Print shipped the mail, along with the stamped Form 8125s, to destination post offices using UPS, a private carrier. The Form 8125s indicated SG Print paid the postage. Festus postal employees never verified SG Print's mail matched the forms.

In the first scheme, Beckman, at Gray's direction, claimed on the postal forms that SG Print had used an inflated number of stamps, thereby decreasing the net postage due. Gray switched schemes after Tremusini told him of a USPS investigation into his activities. In the second scheme, Gray had Beckman remove some of the Form 8125s from USPS's sets. As a result, postal employees stamped as paid numerous Form 8125s that were not actually paid, allowing SG Print to mail the items listed on the missing Form 8125s for free.

### 2. Investigation

On June 8, 2006, Postal Inspector James Pitterle went to the Festus Post Office to investigate reports of problems verifying the mail. During this visit, Tremusini

admitted neither she nor her employees verified SG Print's forms, even though Tremusini knew this was improper. Inspector Pitterle told Tremusini this practice was unacceptable. The same day, Inspector Pitterle realized some of SG Print's Form 3602s claimed a suspiciously high percentage of stamps.[4]

On June 19, 2006, James Williams, a USPS regional manager, went to the Festus Post Office to address complaints from another bulk mailer concerning SG Print getting preferential treatment. Tremusini told Williams the Festus Post Office was following the proper procedures and she personally went to SG Print every day to verify the mail.

In late summer or early fall 2006, Inspector Pitterle told Tremusini he discovered SG Print possibly was claiming more stamps than it actually used. After this discussion, SG Print claimed to use far fewer stamps. Tremusini later admitted she had informed Gray of the postal investigation after this particular conversation with Inspector Pitterle.

In the fall of 2006, Inspector Pitterle learned Tremusini had received two $10,000 checks from Gray in August 2006. On December 12, 2006, Inspector Pitterle and Special Agent Bill Hencken of the USPS Office of Inspector General interviewed Tremusini. Tremusini admitted failing to verify SG Print's mail. After the agents asked Tremusini whether she had received anything of value from Gray, Tremusini said Gray lent her $10,000. Tremusini did not admit to the second $10,000 check until the agents confronted her with a copy of the check. Tremusini then claimed the second payment was also a loan. There was no loan documentation, and Tremusini's bank records did not indicate she was repaying a loan to Gray.

---

[4]Inspector Pitterle testified most bulk mailers use printed indicia instead because it is cheaper and faster.

## B. Procedural Background

Gray pled guilty, pursuant to a plea agreement, to five counts of mail fraud, in violation of 18 U.S.C. § 1341; four counts of using a false document/false statement, in violation of 18 U.S.C. § 1001; and three counts of bribery—offering a gratuity, in violation of 18 U.S.C. § 201(c). Gray maintained the amount of loss was lower than the government claimed. A grand jury charged Tremusini with two counts of bribery—receiving an illegal gratuity by a public official, in violation of 18 U.S.C. §§ 2 and 201(c)(1)(B), to which Tremusini pled not guilty.[5]

### 1. Gray

At Gray's sentencing hearing, Inspector Pitterle testified about the monetary loss from the stamp scheme. By examining SG Print's bank records and USPS's sales records, Inspector Pitterle determined SG Print bought stamps only at the Festus and Crystal City, Missouri, post offices. For the years 2005 and 2006, Inspector Pitterle subtracted the value of the stamps SG Print bought from the value of all stamps SG Print claimed on its Form 3602s, demonstrating a variance and resulting in a loss of $2,270,947.10 from the stamp scheme.

The district court refused to credit Gray for stamps he claimed SG Print bought at post offices other than those in Festus and Crystal City because the district court credited Inspector Pitterle's testimony that SG Print did not buy stamps at other locations. In doing so, the district court rejected the vague testimony of Robert Beers, an employee of SG Print, who claimed he sometimes bought stamps for SG Print from other post offices, noting Beers did not remember how many stamps he bought or when or how often he did so, and no documentation supported such purchases.

---

[5]Beckman pled guilty to two counts of mail fraud, see 18 U.S.C. § 1341, and Jones pled guilty to one count of bribery—receiving an illegal gratuity, see 18 U.S.C. § 201(c)(1)(B).

Postal Inspector Mark Hallisey testified about the amount of loss from Gray's second scheme. Inspector Hallisey subtracted the number of items listed on SG Print's set of postal forms from the number of items listed on USPS's set. Inspector Hallisey initially reported a $1,713,992.44 loss from the second scheme. On cross-examination, Inspector Hallisey admitted to several errors in his calculation. Inspector Hallisey corrected the calculation mistakes and said Gray should be credited $14,902.02. After Inspector Hallisey's revised testimony, the government conceded Gray should be credited an additional $75,407.22 for payments SG Print made to USPS in 2007, reducing the government's calculation of loss from the second scheme to $1,623,683.20.

Gray claimed the amount of loss should be decreased further because destination post offices sometimes failed to deliver mail sent by SG Print and SG Print "wasted" some mail in the production process, such that SG never sent it, even though the mail had postage attached. The district court rejected these arguments. With regard to USPS's alleged failure to deliver some mail, the district court noted any claim based on USPS's delivery failures had to be adjudicated elsewhere.

The district court determined USPS lost $2,270,947.10 from the first scheme and $1,623,683.00 from the second scheme, for a total loss of $3,894,630.10. The district court sentenced Gray to 51 months imprisonment, three years supervised release, and $3,894,630.10 in restitution.

Gray appeals, arguing the district court erred in calculating the amount of loss.

### 2.    Tremusini
#### a.    Coconspirator Statements

During trial, the government told the district court it intended to introduce out-of-court statements by Gray—a coconspirator—regarding Tremusini's role in the fraud.  See Fed. R. Evid. 801(d)(2)(E).[6]  The district court found by a preponderance of the evidence Tremusini joined Gray's conspiracy to defraud USPS, at the latest, when she informed Gray of the investigation.   The district court therefore provisionally admitted "the statements made by the coconspirators in furtherance of the conspiracy."

The government then introduced, over Tremusini's hearsay objections, several out-of-court statements by Gray.  The district court did not make a final United States v. Bell, 573 F.2d 1040, 1044 (8th Cir. 1978), determination at the close of the evidence on the statements' admissibility, and Tremusini did not request a final Bell decision.

#### b.    Motions for Acquittal, Conviction, and Sentencing

The district court denied Tremusini's motions for acquittal at the close of the government's case and at the close of all the evidence.  The district court refused to give the specific jury instructions Tremusini requested.  The jury found Tremusini guilty on both counts. On August 26, 2011, the district court sentenced Tremusini to twenty-four months imprisonment.

Tremusini appeals, challenging the district court's (1) admission of Gray's out-of-court statements, (2) refusal to give Tremusini's requested jury instructions, and (3) denial of her motions for acquittal.

---

[6]At the time of trial, Rule 801(d)(2)(E) provided a statement is not hearsay if "[t]he statement is offered against a party" and was made by the party's coconspirator "during the course and in furtherance of the conspiracy."

## II. DISCUSSION

### A. Gray

Gray argues the district court's loss calculation does not reflect the "fair market value of services provided to [Gray] less the amount actually paid for those services" because the district court erroneously (1) excluded evidence of mail USPS did not deliver, (2) only considered stamps SG Print bought at the Festus and Crystal City post offices, and (3) relied on Inspector Hallisey's faulty testimony about loss from the second scheme.

"We review the district court's loss calculation for clear error and will affirm 'unless it is not supported by substantial evidence, was based on an erroneous view of the law, or [we have] a firm conviction that there was a mistake after reviewing the entire record.'" United States v. McKanry, 628 F.3d 1010, 1019 (8th Cir. 2011) (quoting United States v. Theimer, 557 F.3d 576, 578 (8th Cir. 2009)). We review a district court's evidentiary rulings for a "clear and prejudicial abuse of discretion." United States v. McCracken, 110 F.3d 535, 542 (8th Cir. 1997).

### 1. Evidentiary Rulings

Gray first asserts the district court erroneously calculated the loss using the number of items SG Print claimed on its forms, rather than the number of items USPS actually mailed. According to Gray, the excluded evidence shows USPS mailed less of SG Print's mail than the government claimed due to either waste in the production process or delivery failures by USPS.

"Under the [United States Sentencing Guidelines (U.S.S.G.)], the general rule is that 'loss is the greater of actual or intended loss.'" United States v. Mitchell, 608 F.3d 384, 387 (8th Cir. 2010) (quoting U.S.S.G. § 2B1.1, cmt. 3(A)). Gray contends "a remand for re-sentencing is required" to the extent the government "attempts to argue that the numbers being presented [at Gray's sentencing hearing] were a calculation of intended, not actual, loss" because the government argued only actual

loss in the district court. We need not reach this issue because the district court did not clearly err in calculating the actual loss caused by Gray's fraud.

Actual loss is "the reasonably foreseeable pecuniary harm that resulted from the offense." U.S.S.G. § 2B1.1, cmt. 3(A)(i). The district court must reasonably estimate the amount of loss from fraud using the preponderance of the evidence standard, and need not make an exact determination. See United States v. Hatchett, 622 F.3d 984, 987 (8th Cir. 2010); see also U.S.S.G. § 2B1.1, cmt. 3(C) ("The court need only make a reasonable estimate of the loss.").

The actual loss Gray's fraud caused was the value of the mail services SG Print claimed on its forms—and not, as Gray contends, only the value of the mail USPS actually delivered. See U.S.S.G. § 2B1.1, cmt. 3(C)(i) (stating the district court's estimate of the loss should be based on "[t]he fair market value of the property unlawfully taken"); United States v. Simpson, 538 F.3d 459, 461 (6th Cir. 2008) (explaining the loss from fraud is the fair market value of the items or services fraudulently obtained); see also United States v. Masek, 588 F.3d 1283, 1288 (10th Cir. 2009) (clarifying the purpose of the sentencing hearing is not "to conduct a final accounting between" the parties). If Gray had not engaged in any fraud, SG Print necessarily would have paid for the mail it claimed on its forms, regardless of delivery failures or waste in the production process. Gray's proffered evidence is not relevant to a calculation of actual loss for the fair market value of the services Gray took through his fraud. The district court did not abuse its discretion in excluding the evidence.

### 2. Locations Where SG Print Bought Stamps

The district court did not clearly err in considering only stamps bought at the Festus and Crystal City post offices. The district court was entitled to credit Inspector Pitterle's testimony that he found no evidence SG Print bought stamps in other locations, rejecting Beers's testimony to the contrary. See United States v. Jones, 628

F.3d 1044, 1047 (8th Cir. 2011) (declaring the district court's findings on witness credibility are "virtually unreviewable on appeal") (quoting United States v. Johnson, 601 F.3d 869, 872 (8th Cir. 2010)) (internal quotation marks omitted).

### 3. Inspector Hallisey's Testimony

Finally, Gray maintains Inspector Hallisey's calculation of loss from the second scheme was unreliable because the spreadsheet Inspector Hallisey used had input errors. On redirect examination, Inspector Hallisey corrected the errors identified during cross-examination, and Gray does not point to any other errors. Relying on Inspector Hallisey's testimony was a reasonable method for the district court to estimate the loss and was not clear error. See McKanry, 628 F.3d at 1019; cf. United States v. Lewis, 557 F.3d 601, 615 (8th Cir. 2009) (concluding the district court did not clearly err in making "approximations and rounding" in calculating the amount of loss for purposes of ordering restitution).

## B. Tremusini
### 1. Coconspirator Statements

Tremusini contends the district court improperly admitted Gray's statements to three former SG Print employees—Beckman, William Menkhus, and Rick DeCollo—under the coconspirator exception to the hearsay rule. Beckman testified Gray told her he gave Tremusini $10,000 to secure Tremusini's assistance, and when Beckman expressed concern about involving Tremusini, Gray reassured Beckman that with this payment, "it would all be okay." Menkhus and DeCollo claimed Gray told them Gray wanted to bribe a postal employee and later reported he gave Tremusini money, explaining to Menkhus that Gray made the payment look like a loan.

In general, an out-of-court statement offered "to prove the truth of the matter asserted" in the statement is inadmissible hearsay. Fed. R. Evid. 801(c), 802. A statement by a "coconspirator of a party during the course and in furtherance of the

conspiracy" is not hearsay when it is offered against that party. Fed. R. Evid. 801(d)(2)(E). In Bell, 573 F.2d at 1044, we established a procedure for admitting a coconspirator's statement:

> If the prosecutor propounds a question which obviously requires a witness to recount an out-of-court declaration of an alleged coconspirator, the court, upon a timely and appropriate objection by the defendant, may conditionally admit the statement. At the same time, the court should, on the record, caution the parties (a) that the statement is being admitted subject to defendant's objection; (b) that the government will be required to prove by a preponderance of the independent evidence that the statement was made by a coconspirator during the course and in furtherance of the conspiracy; (c) that at the conclusion of all the evidence the court will make an explicit determination for the record regarding the admissibility of the statement; and (d) that if the court determines that the government has failed to carry the burden delineated in (b) above, the court will, upon appropriate motion, declare a mistrial, unless a cautionary instruction to the jury to disregard the statement would suffice to cure any prejudice.

Tremusini contends Bell requires reversing the district court for failing to determine whether each of Gray's alleged statements were made during and in furtherance of the conspiracy. However, "[t]he procedures outlined in Bell are flexible and do not require reversal for failure to follow those procedures absent a showing of prejudice." McCracken, 110 F.3d at 542.

First, we reject Tremusini's argument that Gray's statements were not made during a conspiracy involving Tremusini because the statements might have been made before Tremusini joined the conspiracy. "[S]tatements made by coconspirators before a defendant joins the conspiracy are admissible as long as the conspiracy or scheme existed at the time the statements were made." United States v. Leroux, 738 F.2d 943, 949-50 (8th Cir. 1984). Tremusini does not claim Gray made the statements before the conspiracy began.

-11-

We also reject Tremusini's contention that Gray's statements were not made in furtherance of the conspiracy. Efforts to conceal a conspiracy actually further that conspiracy, as do "[s]tatements of reasssurance which 'serve to maintain trust and cohesiveness . . . , or inform each other of the current status of the conspiracy.'" United States v. Lewis, 759 F.2d 1316, 1348 (8th Cir. 1985) (quoting United States v. Ammar, 714 F.2d 238, 252 (3d Cir. 1983)); see United States v. Manfre, 368 F.3d 832, 839 (8th Cir. 2004). However, statements that merely "inform[] the listener of the declarant's criminal activities [are] not made in furtherance of the conspiracy." United States v. Ragland, 555 F.3d 706, 713 (8th Cir. 2009).

Contrary to Tremusini's assertion, Gray's statement to Beckman that Gray gave Tremusini money to secure Tremusini's cooperation furthered the conspiracy by (1) explaining Tremusini's role to a coconspirator, and (2) reassuring Beckman that Tremusini would aid in the fraud. See Lewis, 759 F.2d at 1340. The district court did not err in admitting Gray's statements to Beckman.

As for Gray's statements to Menkhus and DeCollo, those statements arguably were made by Tremusini's "coconspirator during and in furtherance of the conspiracy" and are not hearsay,[7] Fed. R. Evid. 801(d)(2)(E), but even if admitting the statements were error, we affirm because Gray was not prejudiced by their admission. See McCracken, 110 F.3d at 542. These statements showed only that Tremusini accepted a bribe from Gray in exchange for overlooking his mail fraud. Gray's statements to Beckman, together with the other evidence, provided sufficient evidence for a reasonable jury to find, beyond a reasonable doubt, the bribe occurred, even without the consistent statements to Menkhus and DeCollo.

---

[7]Tremusini declares in her Reply Brief on appeal, "both [Menkhus and DeCollo] admitted to detailed knowledge of, cooperation in and profit from the conspiracy for years."

## 2.    Jury Instructions

Tremusini also claims the district court erred by not giving the jury two proposed instructions on the credibility of Gray's statements to Beckman, Menkhus, and DeCollo.  See Bell, 573 F.2d at 1044 (requiring an "appropriate instruction on" the credibility of a coconspirator's statement).  Instead of Tremusini's proposed instructions, the district court instructed the jury using Eighth Circuit Model Criminal Jury Instruction (Model Instruction) 4.04:

> You have heard evidence that Donna Beckman and Michael Jones have made plea agreements with the Government.  Their testimony was received in evidence and may be considered by you.  You may give their testimony such weight as you think it deserves.  Whether or not their testimony may have been influenced by the plea agreement is for you to determine.
>
> The witness's guilty plea cannot be considered by you as any evidence of these defendants' guilt.  The witness's guilty plea can be considered by you only for the purpose of determining how much, if at all, to rely upon the witness's testimony.

The district court also gave a general credibility instruction, which included an admonition to consider the witnesses' motives.  "We review a district court's formulation of jury instructions for an abuse of discretion, and will reverse only if an error in the instructions was prejudicial."  United States v. Yielding, 657 F.3d 688, 708 (8th Cir. 2011).

Tremusini first claims the district court should have given a modified version of Model Instruction 4.05A about Menkhus and DeCollo.[8]  Model Instruction 4.05A, as modified, stated:

---

[8]Tremusini does not contest this ruling with regard to Beckman and Jones.

> You have heard testimony from Donna Beckman, Richard D[e]Collo, Michael Jones and William Menkhus who stated that he or she participated in the crime charged against the defendant. Their testimony was received in evidence and may be considered by you. You may give their testimony such weight as you think it deserves. Whether or not his or her testimony may have been influenced by his or her desire to please the Government or to strike a good bargain with the Government about their own situation is for you to determine.

As the district court explained, Model Instruction 4.05A would have been inappropriate because it refers to a witness who has participated in a crime and Tremusini at the instruction conference did not identify any evidence that Menkhus and DeCollo participated in the conspiracy.[9] The instruction the district court gave instead, Model Instruction 4.04, though limited to Beckman and Jones, allowed Tremusini to argue these witnesses' testimony was "influenced by their desire to . . . strike a good bargain with the government." Although Model Instruction 4.04 did not refer to Menkhus and DeCollo, the district court instructed the jury to consider Menkhus and DeCollo's credibility in the general credibility instruction. The district court did not abuse its discretion in refusing to give Model Instruction 4.05A.

Tremusini next contends the district court erred in not giving a modified version of Model Instruction 4.05B about Beckman and Jones. Model Instruction 4.05B, as modified, read:

> You have heard evidence that Donna Beckman and Michael Jones hope to receive a reduced sentence on criminal charges pending against each of them in return for her or his cooperation with the Government in this case. Donna Beckman and Michael Jones entered into agreements with the United States Attorney's Office which provide that in return for her or his assistance the Government will recommend a less

---

[9]But see supra note 7.

severe sentence which could be less than the range of punishment for the crimes with which she and he are charged. If the prosecutor handling these witnesses' cases believes she or he provided substantial assistance, that prosecutor can file in the court in which the charges are pending against each witness a motion to reduce her or his potential sentence. You may give the testimony of these witnesses such weight as you think it deserves. Whether or not testimony of a witness may have been influenced by her or his hope of receiving a reduced sentence is for you to decide.

The district court properly declined to give Model Instruction 4.05B because there was no evidence the government promised the witnesses leniency in exchange for cooperating in the case against Tremusini. Model Instruction 4.04 was appropriate because it involves the credibility of witnesses who have plea agreements, which Beckman and Jones have. The district court did not abuse its discretion in instructing the jury.

### 3.     Tremusini's Motions for Acquittal

"After the government closes its evidence or after the close of all the evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." Fed. R. Crim. P. 29(a). In reviewing the district court's denial of a motion for judgment of acquittal, "'[w]e view the evidence in the light most favorable to the verdict, giving it the benefit of all reasonable inferences,' and we will reverse only if no reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Fuller, 557 F.3d 859, 863 (8th Cir. 2009) (quoting United States v. Monnier, 412 F.3d 859, 861 (8th Cir. 2005)).

To show Tremusini violated 18 U.S.C. § 201(c)(1)(B), the government must prove she accepted the payments from Gray in exchange for committing—or abstaining from—an official act. See United States v. Sun-Diamond Growers of Cal.,

526 U.S. 398, 414 (1999). There is ample evidence Tremusini (1) did not verify SG Print's postal forms even though she knew she was required to do so, (2) lied about verifying SG Print's postal forms, (3) warned Gray the government was investigating the stamp scheme, (4) denied receiving the second $10,000 payment from Gray until she was confronted with a copy of the check, and (5) accepted money for not doing her official duties. These actions allow a reasonable jury to infer Tremusini approved or directed her employees to approve SG Print's postal forms because she had been bribed to do so. The district court properly denied Tremusini's motions for acquittal.

## III.    CONCLUSION

We affirm the district court's judgments.

_____